Filed 1/29/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| LEONID GONCHAROV et al., | |
|     Plaintiffs and Appellants, | A149347 |
| v. | |
| UBER TECHNOLOGIES, INC., et al., | (San Francisco City & County Super. Ct. No. CGC-12-526017) |
|     Defendants and Respondents. | |

Plaintiffs Leonid Goncharov, Mohammed Eddine, Alan Freberg, Trevor Johnson, Peter Kirby, and Jeremy Watt filed a putative class action lawsuit against Uber Technologies, Inc. (Uber) for providing unlicensed transportation services that appropriated passengers and income from licensed taxicab drivers. In the second amended complaint (SAC), plaintiffs alleged Uber failed to comply with the California Public Utilities Commission (CPUC) licensing requirements for charter-party carriers. Uber filed a demurrer, claiming the court lacked jurisdiction under Public Utilities Code[1] section 1759 due to ongoing rulemaking by the CPUC and asserting the SAC failed to state a claim as to all causes of action. Plaintiffs asserted the court had denied these arguments in connection with Uber's demurrer to the first amended complaint and lacked jurisdiction to reconsider these issues without a proper motion under Code of Civil Procedure section 1008. Plaintiffs also contested the substantive arguments raised by Uber. The trial court took judicial notice of various documents associated with the

---

[1] All statutory references are to the Public Utilities Code unless otherwise indicated.

CPUC rulemaking and sustained the demurrer with leave to amend. Plaintiffs declined to amend, and judgment was entered. We affirm the judgment.

## I. BACKGROUND

### A. *Factual Background*

Because this appeal challenges a trial court order sustaining a demurrer, we draw the relevant facts from the complaint and matters subject to judicial notice.[2] (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924.)

Uber provides transportation services to the public by connecting consumers to its " 'partner drivers' " through the use of a GPS-enabled smartphone application. At the time Uber began operating, it had not received any licenses, permits or approvals from the CPUC to operate as a charter-party carrier.[3]

The CPUC issued a cease and desist letter and citation to Uber, asserting Uber was violating various CPUC rules and regulations. The CPUC also initiated rulemaking (Rulemaking) to determine "whether the CPUC should adopt changes to its regulations pertaining to passenger transportation in light of the emergence of companies with business models such as Uber, Lyft and SideCar." In an effort to resolve the cease and desist letter and citation, the CPUC and Uber entered into a settlement agreement in which the CPUC agreed to not enforce the outstanding citation against Uber in exchange

---

[2] On June 28, 2017, Uber filed an unopposed request for judicial notice of 13 documents. At the request of the court, Uber filed a renewed request for judicial notice as to documents one through seven. This renewed request also was unopposed. These documents encompass rulings, submissions, scoping memoranda, and proposed decisions from the ongoing CPUC proceedings. The request also includes a permit issued by the CPUC and the CPUC's docket. We grant judicial notice as to all 13 documents as administrative records of the CPUC. (Evid. Code, § 452, subd. (c); *Davis v. So. Cal. Edison Co.* (2015) 236 Cal.App.4th 619, 632, fn. 11 (*Davis*).) We also consider those materials properly noticed by the trial court in connection with Uber's demurrer to the SAC. (Evid. Code, § 459, subd. (a).)

[3] The SAC also contains allegations regarding Uber's failure to obtain appropriate licenses, permits, and approvals from the San Francisco Municipal Transportation Agency (SFMTA) to operate as a taxicab. However, plaintiffs' claims are not based on any violations of SFMTA rules or regulations, so we need not address them here.

for Uber's compliance with certain consumer protection conditions. The parties agreed the settlement would govern their interactions pending a final decision by the CPUC in the Rulemaking.

The CPUC thereafter issued a decision, which established a new subset of charter-party carriers known as transportation network companies (TNC's). As part of that decision, the CPUC found UberX[4] qualified as a TNC and could not lawfully operate without a CPUC license. The CPUC also "reject[ed] Uber's assertion that TNC's are nothing more than an application on smart phones, rather than part of the transportation industry. . . . Accordingly, Uber is not exempt from the [CPUC]'s jurisdiction over charter-party carriers." That said, the CPUC "left the issue of whether Uber is a [charter-party carrier], despite the fact that it is not a TNC, to be determined in Phase II of this proceeding." Uber subsequently applied for a TNC permit for UberX, which the CPUC issued on April 7, 2014.

During the course of "Phase II," the CPUC requested information and documents from Uber regarding its operations. The CPUC also continued to evaluate issues impacting the new TNC category. When the CPUC issued its decision on Phase II, it was "still considering whether to require Uber, or any of its subsidiaries, to seek operating authority as a TCP."[5] The CPUC concluded, "Uber's status will be taken up as part of Phase III of this proceeding."

"Phase III" was divided into two subphases: III.A. and III.B. Phase III.A. focused on issues impacting TNC's. Phase III.B. addressed eight issues, including additional TNC concerns, the question "Is Uber a TNC?," and the "Regulatory status of Uber." Phase III.B. is currently ongoing and the CPUC has not issued a decision. Uber's non-UberX operations remain unlicensed.

---

[4] UberX is one of several transportation options available through the Uber smartphone application, in which drivers use personal rather than commercial vehicles.

[5] TCP refers to transportation charter-party carriers of passengers, as defined by section 5360.

**B.** *Procedural Background*

**1.** *Uber's First Demurrer*

During the CPUC proceedings, plaintiffs filed a complaint against Uber, which they unilaterally amended (FAC), alleging it operated and advertised itself as a public transportation company without the requisite regulatory approvals from the SFMTA or the CPUC. The FAC asserted causes of action for (1) violation of the Unfair Competition Law (UCL; Bus. & Prof. Code, § 17200 et seq.); (2) intentional interference with prospective economic relations; (3) negligent interference with prospective economic relations; (4) accounting; and (5) declaratory relief.

Uber filed a demurrer to the FAC. The demurrer primarily focused on the doctrine of judicial abstention. It argued the court should abstain from adjudicating the FAC because it would require the court to "assume the functions" or "interfere with the functions" of the CPUC. Specifically, Uber argued "the Legislature has entrusted the power to regulate the vehicle for hire industry to the CPUC and SFMTA," the claims "depend on a determination that Uber is either a taxi company or a Black Car service. . . . [which] lies with the agencies responsible for taxis and Black Cars," and the CPUC is in the process of evaluating these issues. In support of its argument, Uber referenced the settlement agreement between the CPUC and Uber, which allowed Uber to continue its operations "pending a final decision of the Rulemaking." Uber claimed any consideration of the FAC would "nullify the agency's decision, supplant its regulatory authority, and render its work superfluous."

In opposition, plaintiffs argued the Legislature had already defined "taxis" and "charter-party carriers," and the FAC merely sought to determine whether Uber meets the definition through standard statutory construction. In reply, Uber asserted the CPUC has authority to determine the scope of the "charter-party carrier" definition and its related regulations, and is in the process of doing so. Uber argued the court should defer to that authority.

4

The trial court overruled Uber's demurrer. The court declined to invoke the doctrine of judicial abstention, holding, "[t]he gravamen of this instant case is statutory interpretation with no regulatory or administrative implications."

## 2. *Uber's Motion for Judgment on the Pleadings*

Following the issuance of an opinion in a similar matter, *Rosen v. Uber Technologies, Inc.* (N.D.Cal. 2016) 164 F.Supp.3d 1165 (*Rosen*), Uber filed a motion for judgment on the pleadings. In that motion, Uber argued section 1759 divested the superior court of jurisdiction "over suits that interfere with the authority and policies of the [C]PUC." Uber argued the complaint ran afoul of section 1759 because the CPUC has authority to adopt regulations over passenger transport, has "*actively* exercised this authority" by creating a new regulatory regime for TNC's, and is continuing to exercise that authority by its ongoing review of these issues and the regulatory status of Uber. It asserted holding Uber liable for violating CPUC regulations that the CPUC "explicitly determined Uber was not required to follow would upset the compromise that the [C]PUC reached with Uber and would thus 'obstruct or interfere with [C]PUC policy.' "

In opposing the motion, plaintiffs argued Uber "improperly [sought] to re-adjudicate issues that have already been decided in this case." Specifically, plaintiffs asserted the court had already evaluated and ruled on the question of whether it should defer to the CPUC's authority. Plaintiffs emphasized, "[t]he [C]PUC did not undertake any investigation into Uber's past conduct."

The trial court granted Uber's motion for judgment on the pleadings. The court noted Uber's motion raised a new issue because "[n]either party argued and neither party cited to California Public Utilities Code section 1759 in the initial demurrer." The court found "the gravamen of Plaintiffs' [complaint] is that Uber is acting as an unlicensed charter-party carrier in violation of [C]PUC regulations or as unlicensed taxicabs violation of SFMTA rules and regulations, thereby damaging the class of taxicab drivers. The [C]PUC is in the rule-making stage regarding Uber's status as a charter-party carrier and has declared that Uber vehicles are not taxicabs. Any award of damages based upon the [complaint] could only be premised upon a finding that Uber vehicles are illegally

5

operating either as charter-party carriers or as taxicabs—a finding which directly contravenes those of the [C]PUC." As a result, the court concluded "Plaintiffs' allegations directly implicate the [C]PUC's exclusive rulemaking authority," and held it lacked jurisdiction under section 1759.

### 3. *Uber's Second Demurrer*

Plaintiffs subsequently filed their SAC against Uber. In response, Uber filed a demurrer to the SAC. The parties' arguments in support of and in opposition to the demurrer closely mirrored those raised in Uber's motion for judgment on the pleadings.

The trial court granted Uber's demurrer with leave to amend. The court again held claims relating to UberX's operations prior to April 7, 2014 and non-UberX operations were "barred by section 1759." However, the court "reject[ed] Uber's argument that its demurrer should be sustained on jurisdiction grounds" because the SAC alleged new claims regarding UberX's failure to comply with the terms of its CPUC permit "that are not barred by section 1759." The court also concluded plaintiffs failed to state a claim under the UCL because "the relief sought . . . amounts to a request for damages, which is not available under the UCL," and failed to state a claim for interference with prospective economic relationship because plaintiffs failed to allege an economic relationship, causation, or a duty of care.[6]

Plaintiffs did not file an amended complaint and stipulated to entry of judgment. The trial court subsequently entered judgment, and plaintiffs timely appealed.

## II. DISCUSSION

### A. *Standard of Review*

"We review an order sustaining a demurrer de novo to determine whether the complaint states facts sufficient to constitute a cause of action. [Citations.] We construe the complaint 'liberally . . . with a view to substantial justice between the parties' [citation] and treat it ' " 'as admitting all material facts properly pleaded, but not

---

[6] The trial court also dismissed plaintiffs' false advertising, accounting, and declaratory relief claims. However, plaintiffs have not contested those aspects of the trial court's ruling.

6

contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." ' " (*Rufini v. CitiMortgage, Inc*. (2014) 227 Cal.App.4th 299, 303–304.)

" '[W]hen a plaintiff is given the opportunity to amend his complaint and elects not to do so, strict construction of the complaint is required and it must be presumed that the plaintiff has stated as strong a case as he can.' " (*Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1091.)

## B. *Uber's Demurrer to the SAC*

Plaintiffs argue Uber's demurrer to the SAC raised "many of the same arguments" as were raised in its prior demurrer, which was overruled. Because of these similarities, plaintiffs claim Uber was required to comply with the statutory requirements for reconsideration motions. Plaintiffs assert the trial court erred in granting the demurrer because Uber failed to meet these requirements.

Section 1008 of the Code of Civil Procedure states: "A party who originally made an application for an order which was refused in whole or part . . . may make a subsequent application for the same order upon new or different facts, circumstances, or law." (*Id.*, subd. (b).)[7] However, section 1008 does not apply when a party files a demurrer to an amended cause of action. (*Clausing v. San Francisco Unified School Dist*. (1990) 221 Cal.App.3d 1224, 1232–1233.) As the court in *Clausing* explained: "[R]espondents were not obliged to comply with Code of Civil Procedure section 1008, subdivision (b), in bringing their second demurrer. That statute, which provides that any subsequent application for an order which was previously refused must be supported by an affidavit setting forth particulars concerning the initial motion and stating the new or

---

[7] While plaintiffs cite subdivision (a) of Code of Civil Procedure section 1008, they do not suggest Uber requested the court modify or revoke Judge Goldsmith's order in its subsequent demurrer. Rather, plaintiffs argue Uber sought the same order (i.e., dismissal of certain causes of action) previously sought before Judge Goldsmith. Thus, subdivision (b) of section 1008, not subdivision (a), applies.

different state of facts claimed to exist, is simply not relevant under the facts of this case. Respondents' second demurrer was an appropriate responsive pleading to a new complaint." (*Id*. at p. 1232, fn. omitted.) "[W]hen a plaintiff files an amended pleading . . . , the amended cause of action is treated as a new pleading and a defendant is free to respond to it by demurrer on any ground." (*Berg & Berg Enterprises, LLC v. Boyle* (2009) 178 Cal.App.4th 1020, 1035 (*Berg & Berg*).) Here, the trial court dismissed all causes of action contained in the prior complaint. The SAC was then filed, and Uber demurred to the SAC. Uber did not file a "renewed demurrer" to the prior complaint. Instead, Uber's demurrer was "an appropriate responsive pleading to a new complaint." (*Clausing*, at p. 1232.)

Plaintiffs cite two cases, *Bennett v. Suncloud* (1997) 56 Cal.App.4th 91 (*Bennett*), and *Le Francois v. Goel* (2005) 35 Cal.4th 1094 (*Le Francois*), to argue otherwise. Neither case is applicable. In *Bennett*, the trial court sustained the defendant's demurrer as to some causes of action but denied the demurrer as to the remaining claims. (*Id*. at p. 96.) After the plaintiff filed an amended complaint, the defendant again demurred to the entire complaint on the same grounds as in its prior demurrer. (*Ibid*.) The trial court subsequently sustained the demurrer as to all causes of action. (*Ibid*.) On appeal, the court concluded, "after the specified causes of action were amended, [the defendant] was free to demur to those causes of action on any ground." (*Ibid*.) However, the "decision to render judgment on the entire complaint and not just the three amended causes of action was improper." (*Id*. at p. 97.)

In *Le Francois*, *supra*, 35 Cal.4th 1094, the defendants moved for summary judgment, which was denied. (*Id*. at p. 1097.) Certain defendants subsequently filed a new motion for summary judgment "based on the same grounds as the first motion," which was then granted. (*Ibid*.) The Court of Appeal affirmed, concluding while the second motion violated Code of Civil Procedure sections 437c, subdivision (f)(2) and 1008, the trial court had inherent power to rule upon the second motion. (*Le Francois*, at p. 1097.) The Supreme Court reversed, holding that the statutes "impos[e] a limitation on

8

the parties' ability to file repetitive motions, but not on the court's authority to reconsider its prior interim rulings on its own motion." (*Id.* at p. 1105.)

Read together, *Bennett* and *Le Francois* stand for the unremarkable proposition that a party cannot seek to dismiss the same claim based on a previously rejected argument without seeking reconsideration. In *Bennett*, specifically, the defendant improperly sought to raise the same demurrer to causes of action that had not been previously dismissed. (*Bennett*, *supra*, 56 Cal.App.4th at pp. 96–97.) Here, however, the court dismissed *all* of plaintiffs' causes of action when it granted Uber's motion for judgment on the pleadings.[8] As a result, Uber's subsequent demurrer was not a "repetitive motion." Instead, it was a new motion as to new causes of action, which did not require compliance with Code of Civil Procedure section 1008. (*Berg & Berg*, *supra*, 178 Cal.App.4th at p. 1035.)

In any event, reviewing courts may consider de novo whether a challenged claim states a cause of action. (*Bennett*, *supra*, 56 Cal.App.4th at p. 97.) An appellate court's role "entails review of the trial court's ruling, not its rationale. Thus, even if the trial court . . . were constrained by its prior rulings . . . , [an appellate court is] not so constrained and [is] free to render an opinion based on the correct rule of law." (*Berg & Berg*, *supra*, 178 Cal.App.4th at p. 1036; see *Edward Carey Const. Co. v. State Compensation Ins. Fund* (2011) 194 Cal.App.4th 657, 661 ["We also ' "are not bound by the determination of the trial court, but are required to render our independent judgment on whether a cause of action has been stated." ' "].) As such, we are not bound by either trial court order.

C. *Superior Court Jurisdiction Under Sections 1759 and 2106*

The trial court held section 1759 barred plaintiffs' claims relating to the operation of UberX vehicles prior to April 7, 2014 and the operation of non-UberX vehicles. The

---

[8] Plaintiffs do not contest the appropriateness of the court's order granting Uber's motion for judgment on the pleadings. We therefore conclude they have waived any such argument. (*Behr v. Redmond* (2011) 193 Cal.App.4th 517, 538 [failure to brief issue "constitutes a waiver or abandonment of the issue on appeal"].)

court concluded it "has no authority to make findings as to the legality of Uber's operation of non-UberX vehicles in light of Phase II of the [C]PUC proceedings, which will consider 'Uber's status as a possible TCP.' " Likewise, the court found it lacked authority to make findings regarding the period before the CPUC exercised its authority on April 7, 2014, as such findings would interfere with the authority of the CPUC. In response, plaintiffs argue the California Supreme Court has allowed parties to bring lawsuits concerning past noncompliance with CPUC regulations. Plaintiffs also argue section 1759 does not apply when a lawsuit seeks damages for past injuries or is not contrary to any CPUC findings. We find these arguments unpersuasive, and address them in part II.C.2., *post*.

### 1. *Section 1759 and* Covalt

The CPUC is a state agency of constitutional origin and possesses broad authority to supervise and regulate every public utility in California. (Cal. Const., art. XII, §§ 1–6.) It has the power to "do all things, whether specifically designated in [the Public Utilities Act] or in addition thereto, which are necessary and convenient in the exercise of such power and jurisdiction." (§ 701.) Its powers include setting rates, establishing rules, holding hearings, awarding reparation, and establishing its own procedures. (*San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 915 (*Covalt*).) " 'The commission's authority has been liberally construed' [citation], and includes not only administrative but also legislative and judicial powers." (*Ibid*.)

The Legislature has acted to limit judicial review of CPUC actions. Section 1759, subdivision (a) provides: "No court of this state, except the Supreme Court and the court of appeal, to the extent specified in this article, shall have jurisdiction to review, reverse, correct, or annul any order or decision of the commission or to suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the commission in the performance of its official duties, as provided by law and the rules of court." However, this provision "is not intended to, and does not, immunize or insulate a public utility from any and all civil actions brought in superior court." (*People ex rel. Orloff v. Pacific Bell* (2003) 31 Cal.4th 1132, 1144 (*Orloff* ).) The Legislature " 'provided for a

10

private right of action against utilities for unlawful activities and conduct' " by enacting section 2106: "Any public utility which does, causes to be done, or permits any act, matter, or thing prohibited or declared unlawful, or which omits to do any act, matter, or thing required to be done, either by the Constitution, any law of this State, or any order or decision of the commission, shall be liable to the persons or corporations affected thereby for all loss, damages, or injury caused thereby or resulting therefrom. . . . An action to recover for such loss, damage, or injury may be brought in any court of competent jurisdiction by any corporation or person." (*Mata v. Pacific Gas & Electric Co*. (2014) 224 Cal.App.4th 309, 315; § 2106.)

We are not the first court to address the interplay between sections 1759 and 2106: "Section 2106 and section 1759 address different things. Section 1759 defines and limits the power of courts to pass judgment on, or interfere with, what the commission does. Section 2106, on the other hand, confirms the full power of the courts to pass judgment on what utilities do." (*Cundiff v. GTE California Inc*. (2002) 101 Cal.App.4th 1395, 1405.) "The similarity between the two statutes is that they both dictate which courts have jurisdiction to engage in these activities. Only appellate courts can review decisions and orders of the commission and interfere with its actions, whereas suits for relief against utilities can be brought in the trial court." (*Ibid*.) The California Supreme Court, however, "has recognized that a plaintiff's attempt to obtain relief under section 2106 may have the *effect* of interfering with the commission's regulation of utilities." (*Ibid.*) In *Waters v. Pacific Telephone Co*. (1974) 12 Cal.3d 1, the Supreme Court stated section 2106 "must be construed as limited to those situations in which an award of damages would not hinder or frustrate the commission's declared supervisory and regulatory policies." (*Id.* at p. 4.) The court expanded upon this concept in *Covalt*: "Under the *Waters* rule, . . . an action for damages against a public utility pursuant to section 2106 is barred by section 1759 not only when an award of damages would directly contravene a specific order or decision of the commission, i.e., when it would 'reverse, correct, or annul' that order or decision, but also when an award of damages would simply have the effect of undermining a general supervisory or regulatory policy

of the commission, i.e., when it would 'hinder' or 'frustrate' or 'interfere with' or 'obstruct' that policy." (*Covalt, supra,* 13 Cal.4th at p. 918.) Nonetheless, "superior courts are not precluded from acting in aid of, rather than in derogation of, the [C]PUC's jurisdiction." (*Hartwell Corp. v. Superior Court* (2002) 27 Cal.4th 256, 275 (*Hartwell*).) In general, damages actions challenging "a ruling of the commission on a single matter such as its approval of a tariff or a merger . . . would not 'hinder' a 'policy' of the [CPUC]." (*Covalt,* at pp. 918–919.) "But when the relief sought would have interfered with a broad and continuing supervisory or regulatory program of the commission, the courts have found such a hindrance and barred the action under section 1759." (*Id.* at p. 919.)

In *Covalt,* the Supreme Court set forth a three-part inquiry for evaluating whether an action is precluded by section 1759: (1) whether the CPUC has authority to adopt regulatory policy on the issue in question; (2) whether the CPUC has exercised that regulatory authority; and (3) whether the superior court action would hinder or interfere with the CPUC's exercise of that regulatory authority. (*Covalt, supra,* 13 Cal.4th at pp. 923, 926, 935.) Neither party disputes the first two prongs of the *Covalt* test are met. We agree, and find the CPUC has authority to adopt regulatory policies concerning transportation companies and has exercised that authority. However, the parties dispute the third prong, i.e., whether a finding of liability against Uber in this action would hinder or interfere with the CPUC's exercise of regulatory authority with respect to charter-party carriers and TNC's.

### 2. *Application of* **Covalt** *to the SAC*

Plaintiffs' SAC focuses on two classes: UberX operations prior to April 7, 2014 and all non-UberX operations.[9] The SAC alleges Uber operated "as an unpermitted and

___

[9] The trial court ruled section 1759 did not deprive it of jurisdiction to the extent plaintiffs' claims were based on alleged violations of the April 2014 permit. We question whether the trial court needed to reach this holding. While the SAC contains allegations regarding UberX permit violations, the SAC does not assert class claims against UberX for conduct after April 7, 2014 (the date CPUC issued UberX's permit), and plaintiffs' briefs repeatedly state the class claims exclude UberX operations after April 7, 2014.

unlawful charter-party carrier." The SAC further alleges "Uber has continued to provide multiple levels of unlicensed service such as 'uberXL,' 'UberBLACK,' 'UberSUV,' 'uberTAXI," and 'uberPOOL,' " even after UberX received "a limited permit to operate." In response, Uber asserts the superior court's consideration of plaintiffs' claims would hinder or interfere with the CPUC's development of the TNC regulatory scheme and the newly launched Phase III of its Rulemaking. Uber argues this phase will "evaluate whether Uber's operations qualify it as a charter-party carrier" and "whether Uber should be considered a TNC."

The gist of plaintiffs' complaint is that Uber was a charter-party carrier, even before the CPUC established the TNC classification. And, as a charter-party carrier, Uber was subject to the same rules and regulations applicable to traditional charter-party carriers and failed to comply with those rules and regulations. In support of their argument, plaintiffs rely heavily on *Hartwell*, *supra*, 27 Cal.4th 256. In *Hartwell*, residents filed civil actions alleging "that certain water companies provided them unsafe drinking water causing death, personal injury, and property damage." (*Id.* at p. 260.) Plaintiffs cite *Hartwell* for the proposition that "[a]lthough a [C]PUC factual finding of past compliance or noncompliance may be part of a future remedial program, a lawsuit for damages based on past violations of water quality standards would not interfere with such a prospective regulatory program."[10] (*Id.* at p. 277.)

---

However, we need not address this issue. Any such error was harmless because the trial court properly dismissed the entire complaint on other grounds. (*Berg & Berg*, *supra*, 178 Cal.App.4th at p. 1036 [appellate court's role "entails review of the trial court's ruling, not its rationale"].)

[10] Plaintiffs also rely on *Orloff*, *supra*, 31 Cal.4th 1132. However, that case is distinguishable because it was brought by district attorneys rather than private individuals. The Supreme Court noted "a number of statutory provisions expressly authorize public law enforcement officials . . . to initiate civil enforcement actions against public utilities in instances of alleged misconduct by such utilities." (*Id.* at p. 1138.) These statutes "significantly influence the inquiry whether a general regulatory policy of the [C]PUC would be interfered with or undermined by the filing and maintenance of the civil action." (*Id.* at p. 1150.)

Plaintiffs argue this court should reach a similar conclusion—namely, that Uber's liability as a charter-party carrier for past damages would not interfere with the CPUC's prospective regulatory program for TNC's. However, plaintiffs overlook key aspects of *Hartwell* that undermine their analogy. The Supreme Court discussed *Hartwell* at length in *Orloff*, *supra*, 31 Cal.4th at pages 1146–1148. There, the Supreme Court noted "our decision [in *Hartwell*] relied upon the following circumstances: (1) the investigation by the [C]PUC that led to the decision was characterized by the commission as *a process designed to gather information, rather than as a rulemaking proceeding*; (2) . . . the finding by the [C]PUC that the utilities had complied with water quality standards *did not constitute 'part of a broad and continuing program to regulate* . . . water quality' and thus the program 'was not part of an identifiable "broad and continuing supervisory or regulatory program of the commission" [citation] . . .'; and (3) the civil action sought damages for injuries caused by water that had failed to meet water standards in prior years, whereas any finding by the [C]PUC regarding past compliance would be relevant only to a future remedial program . . . ." (*Id.* at pp. 1147–1148, italics added.) While plaintiffs focus on this last factor, they ignore the prior two. Here, significantly, the first two factors are directly relevant. The CPUC's evaluation of whether Uber is a charter-party carrier and what regulations should apply is not merely informational. Rather, it is an express focus of the CPUC's formal Rulemaking regarding Uber and TNC's. Any determination regarding Uber's status would strike at the heart of this process. And any finding by the CPUC on this issue would be directly related to its ongoing efforts to regulate Uber and TNC's. A judicial ruling to the contrary could potentially undermine this process.

The Second and Fourth Appellate Districts have addressed similar issues—i.e., an interpretation of a statutory definition in connection with ongoing CPUC regulatory activity. And both courts concluded section 1759 barred such actions. We concur with our colleagues.

In *Anchor Lighting v. Southern California Edison Co.* (2006) 142 Cal.App.4th 541, the plaintiff argued it fell within the definition of a "small commercial customer"

under CPUC regulations and thus qualified for a rate reduction. (*Id.* at p. 546.) The trial court sustained the defendant's demurrer on the ground it lacked jurisdiction under section 1759. (*Id.* at p. 547.) The Second Appellate District subsequently affirmed the trial court's order, holding the expanded definition of "small commercial customer" sought by the plaintiff's lawsuit would impact the CPUC-approved rate reductions and related financing scheme. (*Id.* at p. 550.) As a result, "the interference with the CPUC's ratemaking function is clear." (*Ibid.*; see *Davis, supra,* 236 Cal.App.4th at p. 643 [held § 1759 barred claims due to the "complexity" of interpreting concepts relating to tariff application deadlines].) Likewise, in *Schell v. Southern California Edison Company* (1988) 204 Cal.App.3d 1039, the Fourth Appellate District was asked to determine whether a recreational vehicle park should be charged electricity rates applicable to "mobilehomes." (*Id.* at pp. 1042–1043.) The court held such a determination was "within the exclusive purview of the [C]PUC as part of its continuing jurisdiction over rate making and rate regulation." (*Id.* at p. 1046.) These cases "stand for the general principle that even where a plaintiff seeks only to enforce a CPUC rule, the action is impermissible if its adjudication requires courts to determine how, or even whether, an ambiguous CPUC rule applies, because this type of determination is policymaking that would hinder or interfere with CPUC's exercise of its jurisdiction." (*North Star Gas Co. v. Pacific Gas and Electric Co.* (N.D.Cal. Sept. 26, 2016, case No. 15-cv-02575-HSG) 2016 WL 5358590, p. *13 (*North Star*); see *Davis,* at p. 640 ["in cases where the courts have found that the [C]PUC does not have exclusive jurisdiction, the lawsuits have typically not required interpretation of [C]PUC-approved rules"].) "Conversely, if an action seeks to enforce a rule that clearly sets out the nature of the obligation imposed, . . . simply deciding whether a defendant's actions did or did not violate that standard does not hinder or interfere with the CPUC's jurisdiction . . . ." (*North Star,* at p. *13.)

We also find *Rosen, supra,* 164 F.Supp.3d 1165, instructive. There, as here, "[t]he crux of [the plaintiff's] CPUC-based claims appears to be his allegation that, until Uber's subsidiary was issued a permit on April 7, 2014, Uber 'was unregulated and operating illegally in the State of California.' " (*Id.* at p. 1174.) The plaintiff's complaint

15

acknowledged "the CPUC adopted rules and regulations affecting Uber . . . , that it issued a permit to Uber's subsidiary . . . on April 7, 2014, and 'deferred any non-TNC related issues, including Uber's potential status as a charter-party carrier of passengers ("TCP"), to a later date.' " (*Id.* at pp. 1174–1175.) In light of these allegations, the court concluded "granting relief . . . would 'interfere[] with a broad and continuing supervisory or regulatory program' of the CPUC." (*Id.* at p. 1174.) Specifically, "the CPUC's ongoing process of determining which regulations Uber and other new TNCs must follow." (*Id.* at p. 1177.)

In the instant matter, plaintiffs ask this court to determine whether Uber qualifies as a charter-party carrier and what regulations should apply to its operations. This question is far from resolved, and does not seek to apply a "clearly set[] out" rule. (*North Star*, *supra*, 2016 WL 5358590, at p. *13.) Rather, the CPUC has been attempting to resolve these very questions for over four years.

First, the CPUC is actively addressing these questions as to Uber's non-UberX operations in Phase III.B., including: (1) "What is Uber for purposes of determining the full extent of the Commission's jurisdiction"; (2) "Should Uber be considered a Charter-Party Carrier (TCP)"; and (3) "Should any other Uber subsidiary or Uber affiliated business . . . be considered a TCP?" The CPUC also is evaluating whether it should "reconsider its determination . . . that Uber is not a TNC." As part of this reevaluation, the CPUC is investigating how Uber selects and screens TNC drivers, manages noncompliant drivers, investigates passenger complaints, and calculates fares. And, to the extent plaintiffs challenge Uber's ongoing activities, they ask us to countermand the CPUC's determination that Uber may continue to operate while it completes its Rulemaking.

Second, plaintiffs argue the CPUC has already determined UberX is subject to CPUC regulations and, consequently, should have been subject to those regulations during its entire operations period. We disagree. The CPUC determined UberX's operations qualified as a TNC—a new category created during the initial stage of its Rulemaking. But in making that determination and subsequently issuing a permit to

16

UberX, the CPUC is not "done with [UberX]," as plaintiffs' counsel suggested at oral argument. To the contrary, the CPUC continues to retain regulatory jurisdiction over UberX's operations. The 2014 permit issued to UberX, for example, expressly states, "The requirements and status of your issued TNC permit may change pending determinations the [CPUC] may make in Phase II of Rulemaking 12-12-011." Likewise, UberX's 2017 permit also notes, "The requirements and status of your issued TNC permit may change pending determinations the [CPUC] may make in Rulemaking 12-12-011 or a successor proceeding." These permits not only preserve the CPUC's jurisdiction over UberX, but expressly reserve the CPUC's right to create and modify the scope of regulations applicable to UberX's operations. Any litigation regarding what regulations should apply to UberX infringes upon the CPUC's ongoing rulemaking in this area and its reserved authority to modify those regulations.[11]

Plaintiffs also argue the superior court should have jurisdiction because the CPUC cannot award damages and has not sought to review Uber's past conduct. Plaintiffs claim these factors suggest any relief would not "interfere with the [C]PUC's regulatory authority." (See *PegaStaff v. Pacific Gas & Electric Co.* (2015) 239 Cal.App.4th 1303, 1318.) But a court cannot provide redress for a past regulatory violation without first determining what, if any, CPUC regulations apply. While an award of damages may not usually impact the CPUC's authority, in this instance the issues a court must address to reach such an award would do so.

As discussed above, allowing the SAC to proceed would require the trial court to make factual findings regarding whether Uber falls within the charter-party carrier definition and, if so, which regulations would apply to its operations. A judicial

_____

[11] We also note plaintiffs' claims as to UberX for the period January 2013 to April 2014 run afoul of the settlement between Uber and the CPUC. That settlement set forth various terms for Uber's continued operations (also presumably applicable to those of UberX). From the time the parties entered into the settlement until UberX received its initial TNC permit, the CPUC exercised its jurisdiction to ensure Uber's compliance with the settlement terms. Any attempt to find UberX in violation of TCP regulations during this period would clearly interfere with the CPUC's regulatory authority.

determination on these issues would directly infringe upon the CPUC's ongoing rulemaking in this area. As such, the claims in the SAC are barred by section 1759.[12] Because we find these claims barred by section 1759, we need not address whether the SAC stated any viable claims for relief.

### III. DISPOSITION

The judgment of the trial court is affirmed. Defendant Uber Technologies, Inc. may recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

---

[12] Plaintiffs also raise two other arguments, which we can summarily dismiss. First, plaintiffs argue Uber cannot raise the jurisdictional bar of section 1759 because it previously argued the CPUC lacked jurisdiction. However, the CPUC rejected this argument and asserted jurisdiction. As such, Uber is not a "nonregulated defendant," as argued by plaintiffs. Second, plaintiffs argue the trial court reached its holding by relying on allegations beyond the scope of their SAC—i.e., "the belief that a finding that Uber was a taxicab under the SFMTA regulations would directly conflict with the [C]PUC's finding that Uber was not a taxicab." But this concern is neither stated in the trial court's order on the second demurrer, nor in the referenced section of the order on Uber's motion for judgment on the pleadings. Instead, the trial court only stated the FAC was premised on "violation[s] of the [C]PUC and the SFMTA" and "[t]his Court has no authority to make findings contrary to the Commission as such findings would interfere with and contravene the authority of the [C]PUC."

                                _____

                                Margulies, J.

We concur:

_____

Humes, P.J.

_____

Banke, J.

A149347
*Goncharov v. Uber Technologies, Inc.*

Trial Court:   San Francisco City and County Superior Court

Trial Judge:   Hon. Mary E. Wiss

Counsel:


The Brandi Law Firm, Thomas J. Brandi, Brian J. Malloy and Jason B. Friedman for Plaintiffs and Appellants.

Reed Smith, Raymond A. Cardozo and David J. de Jesus for Defendant and Respondent.