Filed 5/17/19; certified for publication 6/11/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO,<br><br>    Respondent,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., ET AL,<br><br>    Appellants. | A153205<br><br>(San Francisco County<br>Super. Ct. No. CPF-17-515767) |

Appellants Uber Technologies, Inc., Raiser-CA, LLC, and Rasier, LLC (collectively, Uber) challenge an order directing them to comply with administrative subpoenas issued by the City Attorney of San Francisco (the City Attorney) for reports and data submitted to the California Public Utility Commission (CPUC).[1]

We find that it was within the City Attorney's investigative powers to issue the administrative subpoenas. We further find that section 1759 of the Public Utilities Code[2] did not deprive the trial court of jurisdiction and that the primary jurisdiction doctrine did not apply to postpone enforcement of the administrative subpoenas. In addition, we find Uber's confidentiality arguments to be without merit given the protective order stipulated to by Uber and issued by the trial court. Therefore, we affirm.

---

[1] Raiser-CA, LLC is wholly owned by Raiser, LLC, which is wholly owned by Uber Technologies, Inc. The City Attorney issued two identical subpoenas to: (1) Uber Technologies, Inc.; and (2) Raiser-CA, LLC and Rasier, LLC.

[2] Unless otherwise indicated, all further undesignated statutory references are to the Public Utilities Code.

**FACTS AND PROCEDURAL HISTORY**

Uber operates "transportation networking companies" (TNC) in numerous locations, including San Francisco. TNCs "facilitate prearranged transportation services, using smart-phone applications to network riders looking for rides with independent third party transportation providers (Drivers) looking to provide rides at their convenience with their personal vehicles." Tens of thousands of drivers use the Uber smart phone application to arrange rides in San Francisco.

As a TNC, Uber is regulated by the CPUC. All TNCs are required to submit reports and data to the CPUC on an annual basis (the CPUC Annual Reports). This requirement includes reports and data submitted via CPUC spreadsheet templates concerning: (1) accessible vehicles; (2) service by zip code; (3) problems with drivers; (4) hours logged by drivers; (5) miles logged by drivers; and (6) drivers' completion of driver training courses. TNCs are also required to file an annual accessibility plan which must include information regarding access needs, timelines for responding to such needs, and a "plan for ensuring that drivers' review of customers will not be used in a manner that results in discrimination." Finally, TNCs must submit a narrative report addressing their plans for provisions of services to disabled communities.

*The Investigation and Administrative Subpoenas*

The City and County of San Francisco (the City) is a municipal corporation existing under its charter and the laws of the State of California. It is empowered by the California Constitution to control its own municipal affairs. (See Cal. Const., art. XI, §§ 3–6.) Article XI of the California Constitution recognizes the City's authority to enforce laws of general application via its police power. (See Cal. Const., art. XI, § 7.) The City's charter states the City Attorney must "[r]epresent the City and County in legal proceedings with respect to which it has an interest" (§ 6.102(1).) and empowers the City Attorney to commence legal proceedings whenever a cause of action "in favor of the City . . . is within [its] knowledge." (S.F. Charter, § 6.102(3).) The San Francisco Administrative Code empowers the City Attorney to employ subpoenas when the City Attorney investigates any potential violations of municipal law (S.F. Admin. Code,

2

§ 2A.230) or California law (S.F. Admin. Code, § 2A.231).  (See *Dibb v. County of San Diego* (1994) 8 Cal.4th 1200, 1213–1219 [charter county has the power to confer subpoena power; citing *Brown v. City of Berkeley* (1976) 57 Cal.App.3d 223, 236 [charter city review board granted power to issue subpoenas].)

After receiving numerous complaints from the San Francisco Municipal Transportation Agency (SFMTA) regarding illegal parking, traffic congestion, and safety hazards caused by TNC vehicles, the City Attorney opened an investigation into possible violations of state and municipal law by TNCs, including Uber.  The City Attorney also based its investigation upon a San Francisco police department study showing that TNCs accounted for nearly 65% of all moving violations for driving in transit lanes and bicycle lanes, obstructing bicycle lanes and traffic lanes, failure to yield to pedestrians, and illegal U-turns in business districts;  media reports that Uber and Lyft, Inc. (Lyft, another TNC) incentivize drivers to drive hundreds of miles before starting driving shifts in San Francisco;  and survey data showing that TNC drivers make far less than the San Francisco minimum wage.

On June 5, 2017, the City Attorney issued the administrative subpoenas to Uber pursuant to San Francisco Administrative Code.[3]  (S.F. Admin. Code §§ 2A.230, 2A.231.)  Request number eight in the administrative subpoenas, at issue in this appeal, asks for: "[a]ll Annual Reports filed by Uber with the California Public Utilities

---

[3] The City issued an identical subpoena to Lyft on the same day.  We deny the City's request for judicial notice of the subpoena issued to Lyft and the transcript of proceedings before the San Francisco Superior Court in *City v. Lyft* (San Francisco County Superior Court Case No. CPF-17-515768).  "[The] rulings of other courts in purportedly similar matters are not relevant or helpful in our de novo review . . . . [Citation]."  (*Johnson & Johnson v. Superior Court* (2011) 192 Cal.App.4th 757, 768.)  We also deny the City's request for judicial notice of its response to a public records request to produce documents it subpoenaed from Lyft and an August 3, 2018 news article from the San Francisco Examiner because they are not relevant to any dispositive points on appeal.  (See *Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 544, fn. 4.)

Commission (CPUC) from 2013 to 2017 and all of the raw data supporting" the annual reports on providing accessible vehicles, driver violations/suspensions, number of drivers completing training course, updates on accessibility plan, report on hours/miles logged by drivers, and providing service by zip code.

Uber states in its opening brief that request number seven, which asks for "[d]ocuments evidencing the actual number of miles driven and actual hours logged by San Francisco [d]rivers from 2013 to the present," is also at issue. However, Uber's arguments only address request number eight without any explanation of how those arguments relate to request number seven. Further, at the October 5 trial court hearing, counsel for Uber stated that she "thought seven was CPUC," and counsel for the City stated that "it bears mentioning that Uber provides [the information requested in number seven] to the CPUC." Finally, the Notice of Appeal states that Uber is appealing the trial court's October 25, 2017 order; that order states that Uber only disputes producing documents in response to request number eight and that the "parties shall further meet and confer regarding the documents and/or declaration to be produced by Uber in response to Item 7." Thus, our analysis only addresses request number eight.

***The Trial Court's Order Requiring Uber to Comply with the Administrative Subpoenas***

The City Attorney filed a petition for an order requiring Uber to comply with the administrative subpoenas (the petition) as Uber refused substantial compliance. At the October 5, 2017 hearing on the petition, Uber took the position that it was refusing to comply with request number eight on the basis that the CPUC had primary jurisdiction. In response to the trial court's request for authority supporting this position, Uber responded that it was "obviously not the law" that primary jurisdiction can stop a subpoena but, rather, "this is a collateral attack on something that the [C]PUC has asserted its jurisdiction over." The trial court rejected the primary jurisdiction argument on the basis that it was premature and ordered Uber to produce the CPUC reports. On October 20, 2017, in a letter addressing the draft proposed order from the hearing, Uber informed the City that it would appeal the trial court's ruling and would not produce the CPUC reports until after the appeal was heard.

4

The trial court entered its order on October 25, 2017.  As to request number eight, the trial court held that Uber's primary jurisdiction arguments were premature given that it was a "pre-litigation motion to enforce administrative subpoenas, not a summary judgment motion at the close of discovery.  The City need not prove the merits of its case or demonstrate triable issues of fact before it can enforce its subpoenas or conduct an investigation.  The City has broad investigatory powers, which include the power to obtain information from third parties.  That power is a prerequisite to the adequate enforcement of the law."  The trial court ordered Uber to produce its "annual reports to the [CPUC] from 2013 through 2017," and set a further hearing to address any remaining disputes concerning Uber's compliance with requests one through seven.  Uber and the City entered into a stipulated protective order to protect confidential information produced in response to the administrative subpoenas in September 2017 that the trial court signed in November 2017.

Uber timely filed an appeal on November 14, 2017.

**DISCUSSION**

A.    **Standard of Review**

An order compelling compliance with an administrative subpoena is an appealable final judgment.  (*Dana Point Safe Harbor Collective v. Superior Court* (2010) 51 Cal.4th 1, 7–13.)  On appeal, "[w]e review de novo the question of whether the subpoena meets the standards for enforcement. [Citation.]"  (*State ex rel. Dept. of Pesticide Regulation v. Pet Food Express* (2008) 165 Cal.App.4th 841, 854.)

B.    **The Administrative Subpoenas Were Properly Issued Pursuant to the City's Investigative Power**

The City Attorney has a broad right to investigate, including the use of subpoenas, when it suspects an entity operating within its jurisdiction is violating the law.  (See *California Restaurant Assn. v. Henning* (1985) 173 Cal.App.3d 1069, 1075 (*Henning*) ["the use of subpoenas and subpoenas *duces tecum* as an investigatory tool is an accepted and established part of the administrative process. [Citations.]".)

5

In *United States v. Morton Salt Co.* (1950) 338 U.S. 632, 642–643 (*Morton Salt*), the United States Supreme Court held that the power to make an administrative inquiry is not derived from a judicial function but is instead analogous to the power of a grand jury, which does not depend on a case or controversy to gather evidence but can investigate "merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." The Supreme Court explained that "[t]he only power that is involved [in an administrative inquiry] is the power to get information from those who best can give it and who are most interested in not doing so. Because judicial power is reluctant if not unable to summon evidence until it is shown to be relevant to issues in litigation, it does not follow that an administrative agency charged with seeing that the laws are enforced may not have and exercise powers of original inquiry." (*Id.* at p. 642.)

As explained by the *Henning* court, "[j]udicial deference to administrative discretion and expertise is considerable. The general policy of noninterference is evidenced by the manner in which courts evaluate claims that an administrative subpoena infringes upon interests protected by the Fourth Amendment. Such direct attacks are seldom successful." (*Henning*, *supra*, 173 Cal.App 3d. at p. 1075.) An administrative subpoena will be enforced if it "(1) relates to an inquiry which the administrative agency is authorized to make; (2) seeks information reasonably relevant to that inquiry; and (3) is not too indefinite." (*Ibid.*; see also *Craib v. Bulmash* (1989) 49 Cal.3d 475, 478 ["[f]orty years of United States Supreme Court decisions establish that the subpoenaed records need only be relevant to an authorized regulatory purpose and described with reasonable specificity"].)

### 1. Request Number Eight Relates to Inquiries the City Attorney is Authorized to Make

The City's investigation began because of a concern that Uber was violating the law in several areas relating to "unsafe driving and illegal parking by Uber drivers, the congestion and volume of Uber vehicles, and inequality of access and treatment of passengers . . . . [and] the distance driven by Uber drivers prior to commencing a shift, after media reports that Uber incentivizes drivers to drive as much as 200 miles or more

before driving for an additional 12 to 16 hours, crowding the City's streets with unfamiliar and extremely fatigued drivers. The City is also investigating allegations that Uber's compensation structure results in underpayment of drivers."

The City Attorney also suspected Uber was in violation of state nuisance law. Civil Code section 3479 defines a nuisance as "[a]nything which is . . . an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, or any . . . public park, square, street, or highway." A public nuisance is "one which affects . . . any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal." (Civ. Code § 3480.) Code of Civil Procedure section 731 gives "the city attorney of any town or city in which the nuisance exists" the authority to file a civil action to abate that nuisance pursuant to Civil Code sections 3479-3480. (See *County of Santa Clara v. Atlantic Richfield Co.* (2006) 137 Cal.App.4th 292, 305–306 [court held that a public nuisance claim brought by a group of government entities, including cities, could be based on failure to warn about lead paint].)

The City Attorney also sought to investigate whether Uber was failing to provide adequate accommodations for disabled riders and was, therefore, in violation of the Unruh Civil Rights Acts and other state laws protecting individuals with disabilities. (Civ. Code, § 51, subd. (b) [the Unruh Civil Rights Act gives Californians the right to free and equal treatment regardless of disability, among other factors]; see also Civ. Code § 54 [guaranteeing equal access to individuals with disabilities, including the full and free use of the streets and highways].)

Finally, the City Attorney was concerned about reports that Uber was underpaying its drivers and thereby violating San Francisco's independent minimum compensation ordinance. (S.F. Admin. Code, ch. 12V). Chapter 12V requires companies to pay minimum wage to all independent contractors who work more than twenty hours in San Francisco in any given month, and is enforceable by action of "the City Attorney . . . or any entity acting on behalf of the public as provided for under applicable state law . . . ." (S.F. Admin. Code, ch. 12V(5)(h).)

7

We find that, as explicitly stated in the administrative subpoenas, "[t]he subpoenaed items are relevant to an investigation of possible violations of law, including California Civil Code § 51 *et seq.* [the Unruh Civil Rights Act] and California Civil Code § 54 *et seq.* [California disability rights law], California Civil Code §§ 3479 and 3480 [public nuisance laws], and San Francisco Administrative Code § 12V [minimum wage law] . . . ." Uber unconvincingly argues that "in light of the CPUC's asserted jurisdiction over the TNC industry, the City's subpoena is necessarily outside any inquiry the City is authorized to make." However, we cannot reach the question of a "[h]ypothetical conflict" between the CPUC's jurisdiction and the City's jurisdiction because that conflict may never arise. (*Younger v. Jensen* (1980) 26 Cal.3d 397, 408.) In addition, the City's investigation may be used not only to look into potential violations but also into the question of the City's jurisdiction over those violations. (*Id.* at p. 405.)

**2. Request Number Eight Seeks Reasonably Relevant Information and Is not Too Indefinite**.

The CPUC reports requested are "reasonably relevant" to the City's investigation of possible violations of state and municipal laws by Uber. (*Henning*, *supra*, 173 Cal.App.3d at p. 1075.) The CPUC reports contain information and data regarding safety problems with drivers, as well as hours and miles logged by drivers, which are relevant to the City Attorney's investigation of safety hazards, parking violations, and other possible violations of state nuisance law. The accessibility plans and the data on providing accessible vehicles included in the CPUC reports are clearly relevant to the City Attorney's investigation of possible violations of state law protections for individuals with disabilities. The CPUC reports contain information on amounts paid to drivers and Uber's "paid per trip" method of compensation, which is relevant to the City Attorney's investigation of possible violations of California labor law and San Francisco wage law.

Uber contends that the City has failed to establish the first two required elements of the *Henning* test, but does not dispute compliance with the third element. In any event, request number eight is "not too indefinite" under the third prong of the *Henning* test because it is limited in both scope and time. (*Henning*, *supra*, 173 Cal.App.3d at p.

8

1075.)  Thus, the administrative subpoenas satisfy the *Henning* test because they relate to an investigation which the City is authorized to make, ask for information that is reasonably relevant to that investigation, and are limited in both scope and time.  (*Id.* at p. 1075.)

**C.      Uber's Preemption Arguments Fails**

Uber contends that the City Attorney's investigation, including the issuance of the administrative subpoenas, and "any action the City might take pursuant to that investigation," is preempted under Public Utilities Code section 1759.  We are not persuaded.

**1.  Uber is Regulated by the CPUC as a TNC**

Uber is regulated as a TNC by the CPUC.  The CPUC is a constitutionally established regulatory agency vested with jurisdiction to regulate private persons and entities providing certain services to the public, including the kinds of services provided by Uber.  (Cal. Const., art. XII, §§ 3, 5.)  It has broad authority to "fix rates, establish rules, examine records, issue subpoenas, administer oaths, take testimony, punish for contempt, and prescribe a uniform system of accounts for all public utilities subject to its jurisdiction."  (Cal. Const., art. XII, § 6.)  The Public Utilities Act (§ 201 et seq.) vests the CPUC with broad authority to "supervise and regulate every public utility in the State." (§ 701.)  " 'The commission's authority has been liberally construed' [Citation], and includes not only administrative but also legislative and judicial powers.' [Citation]." (*Goncharov v. Uber Technologies, Inc.* (2018) 19 Cal.App.5th 1157, 1168 (*Goncharov*).)  The CPUC has issued numerous rules and regulations with which TNCs much comply.  For example, TNCs must obtain a license from the CPUC to operate in the state; perform a criminal background check on each driver (§ 5445.2); and keep certain forms of insurance (§ 5433).  The CPUC's rulemaking regarding TNCs is ongoing. [4]

---

[4] Uber requests that we take judicial notice of various CPUC documents.  (Evid. Code § 452, subd. (c); see *Wise v. Pacific Gas & Electric Co*. (1999) 77 Cal.App.4th 287, 297 (*Wise*).)  We grant Uber's request as to Exhibits A through F and H and L as they are official CPUC documents.  We deny Uber's request for judicial notice of Exhibit G, the

The California Legislature has acted to isolate the CPUC's administrative authority from interference by the courts in section 1759, subdivision (a): "No court of this state, except the Supreme Court and the court of appeal . . . shall have jurisdiction to review, reverse, correct, or annul any order or decision of the commission or to suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the commission in the performance of its official duties . . . ." (Pub. Util. Code § 1759, subd. (a).) This limitation on the court's jurisdiction carves out exclusive jurisdiction for the CPUC's adjudicatory and rulemaking jurisdiction. (See *Goncharov*, *supra*, 19 Cal.App.5th at p. 1169 ["Section 1759 defines and limits the power of courts to pass judgment on, or interfere with, what the commission does"].) However, it does not confer upon a company an immunity to civil suits merely because it is regulated under the CPUC's authority. (See *People ex. rel. Orloff v. Pacific Bell* (2003) 31 Cal.4th 1132, 1144 (*Orloff*) ["section 1759(a) is not intended to, and does not, immunize or insulate a public utility from any and all civil actions brought in superior court"].)

### 2. Uber's Preemption Arguments are Premature

Uber makes several preemption arguments based on crystal ball predictions of what the City *might* do in the future based on its current investigation. For example, Uber contends the City might seek an injunction based on its investigation, and as a result "other cities and counties would seek the same powers, thereby exposing TNCs to a patchwork of local regulation across California." Uber also argues that "[t]he fact that the City can cite TNC drivers for traffic violations does not mean it can . . . *regulate* the TNC industry in areas already being regulated by the CPUC." (italics added.)

The City has not, however, instigated litigation seeking an injunction or damages, nor are any proposed regulations at issue. Rather, the City has issued the administrative

transcript of portions of the October 10, 2017 CPUC Workshop, because it is not a complete transcript of the proceedings. We also deny Uber's request for judicial notice of Exhibit K, as it is a February 8, 2018 Writ Petition filed in an unrelated case. Finally, we deny Uber's request for judicial notice of Exhibit J, the legislative history for California Senate Bill 182 from the 2017-2018 Session, because it is not relevant to any of the dispositive points on appeal. (See *Doe*, *supra*, 42 Cal.4th at p. 544, fn. 4.)

10

subpoenas as part of an *investigation* of possible violations of the law.  Thus, as the trial court correctly pointed out during oral argument, Uber is "way too early" with its contention that the administrative subpoenas are "a collateral attack on something that the [C]PUC has asserted jurisdiction over."  As stated in the trial court order: "This is a pre-litigation motion to enforce administrative subpoenas, not a summary judgment motion at the close of discovery.  The City need not prove the merits of its case or demonstrate triable issues of fact before it can enforce its subpoenas or conduct its investigation."

We agree with the trial court's determination that Uber's preemption arguments are premature.  Uber does not cite any cases where enforcement of an administrative subpoena was preempted under section 1759.  Rather, the cases cited by Uber involve proceedings far beyond the investigative stage.  For example, Uber relies on *Goncharov*, *supra,* 19 Cal.App.5th at p. 1170, in which the plaintiff taxi drivers filed a class action seeking a finding of liability against Uber for violating CPUC rules and regulations.  There, the court pointed out that " 'the action is impermissible if its adjudication requires courts to determine how, or even whether, an ambiguous CPUC rule applies, because this type of determination is policymaking that would hinder or interfere with CPUC's exercise of jurisdiction.' " (*Id.* at p. 1172.)  Here, the City is far from seeking a finding of liability against Uber – it is at the preliminary investigatory stage in which it seeks to determine if any violations of state or local law have occurred and, if so, whether it has jurisdiction to seek redress for any such violations.  The trial court's enforcement of the administrative subpoenas in no way requires the court to adjudicate how, or whether, a CPUC rule applies.

### 3. The Trial Court Has Jurisdiction to Enforce the Administrative Subpoenas Under Section 1759

Uber argues that under section 1759 and *San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893 (*Covalt*), the trial court had no jurisdiction, and was therefore preempted, from entering the order enforcing the administrative subpoenas.  We find that Uber has not demonstrated preemption under section 1759 as it disregards the City Attorney's power to investigate and disregards the stage of the proceedings.

11

In *Covalt*, the California Supreme Court established the test to determine whether an action is barred by section 1759. *(Id.* at pp. 923, 926, 925.) There, the plaintiffs filed an action to obtain damages and injunctive relief from an electric company for alleged harm caused by electromagnetic radiation (EMFs) emitted from power lines based on trespass and nuisance theories. (*Id*. at p. 910-912.) The *Covalt* court concluded that the CPUC had exclusive jurisdiction over the nuisance claim, in large part because the plaintiffs sought a ruling directly contrary to the CPUC's decision that EMFs did not pose a substantial risk of harm and that utilities therefore need not take steps to reduce EMFs. (*Id.* at pp. 926–934.) In reaching its decision, the *Covalt* court "set forth a three-part inquiry for evaluating whether an action is precluded by section 1759: (1) whether the CPUC has authority to adopt regulatory policy on the issue in question; (2) whether the CPUC has exercised that regulatory authority; and (3) whether the superior court action would hinder or interfere with the CPUC's exercise of that regulatory authority. [Citation]." (*Goncharov*, *supra*, 19 Cal.App.5th at p. 1170 [citing *Covalt*].)

Trial court jurisdiction "is precluded only if all three prongs of the *Covalt* test are answered affirmatively." (*PegaStaff v. Pacific Gas & Electric Co.* (2015) 239 Cal.App.4th 1303, 1315 (*PegaStaff*).) Since, as detailed below, Uber has not demonstrated that enforcement of the administrative subpoenas would "hinder or interfere with" the CPUC's exercise of its regulatory authority and therefore cannot satisfy the third necessary prong of the *Covalt* test, we do not address the first two prongs. (*Covalt*, *supra*, 13 Cal.4th at pp. 923, 926, 925.)

Uber argues that enforcing the administrative subpoenas would interfere with the CPUC's ongoing rulemaking process regarding whether the CPUC will make reports submitted to it by TNCs available to the public. Specifically, the CPUC is considering whether it should establish a website portal for the TNC data and whether the CPUC should directly share TNC trip data with interested California government entities.[5] In

---

[5] In the Scoping Memo for Phase III, the Commissioner defines the issues in the ongoing rulemaking cited by Uber: "TNC data: (a) Should the Commission establish a website portal for TNC data; and (b) Should the Commission share TNC trip data with

12

support of its argument, Uber cites *Goncharov*, *supra*, 19 Cal.App.5th at p. 1157, which considered the scope of section 1759 in the putative class action lawsuit brought by taxi drivers challenging Uber's alleged failure to comply with CPUC licensing requirements for transportation charter-party carriers (TCPs). There, the court found that allowing the lawsuit to proceed would require the trial court to make factual determinations regarding whether Uber fell within the TCP definition and, if so, which regulations would apply to its operations. (*Id.* at p. 1174.) The court held that "[a] judicial determination on these issues would directly infringe upon the CPUC's ongoing rulemaking in this area," explaining that "any determination regarding Uber's status [as a possible TCP] would strike at the heart" of the CPUC's rulemaking. (*Id.* at pp. 1171, 1174.) Uber's reliance on *Goncharov* is misplaced because the City's power to investigate does not involve judicial determinations that would interfere with CPUC rulemaking.

Unlike the judicial determination in *Goncharov* that "would strike at the heart" of CPUC ongoing rulemaking, the trial court did not need to make any determinations relating to the CPUC rulemaking process in order to determine whether Uber was required to respond to request number eight in the administrative subpoenas. (*Id.* at p. 1171.) Whether the trial court had jurisdiction to order Uber to comply with request number eight is a completely distinct issue from the CPUC considering a website portal

interested California government entities?" The questions listed regarding these issues are: "(1) What is the public and/or research value of a website, database, or other publicly accessible means to host data about transportation for hire that is under the Commission's jurisdiction?; (2) What has been the effectiveness of third-party hosted websites that provide data about Commission programs?; (3) What concerns, if any, are there about the ability of a Commission-sponsored website to protect customer privacy and market sensitive data? (4) What characteristics or design specifications are needed to ensure that a Commission-sponsored website would be flexible enough to adjust to future legislative action including, but not limited to: new background check standards that are germane to the Commission's jurisdiction over TNC's? (5) Should the Commission share TNC trip data with interested California governmental entities? (6) What factors should the Commission take into account in determining if TNC trip data should be shared with interested California governmental entities? (7) What steps should the Commission consider implementing to protect the market sensitivity of trip data?"

13

for TNC data, by which the commission could share trip data with interested California government entities. In other words, Uber's obligation to respond to a valid subpoena is separate and distinct from the CPUC's decision about whether and how the CPUC will share the same information submitted in reports with the public. We decline to limit the scope of a trial court's ability to enforce an administrative subpoena based on the possibility of the CPUC issuing rules allowing it to disclose similar records at an unknown time and manner.

In addition, Uber makes the overarching argument that "the City may not interfere *in any way* with the CPUC's oversight of TNCs." For instance, Uber contends that the City should not be permitted to investigate possible safety or nuisance violations by Uber drivers because the CPUC "controls TNC operations on City streets," and "is fully engaged on this issue, requiring extensive reporting to ensure that TNC drivers operate safely." However, Uber fails to demonstrate how the order requiring it to produce the CPUC reports hinders or interferes with the CPUC's general oversight of TNCs. Instead, Uber makes the argument that "[b]ecause any lawsuit or injunction the City *might* pursue would interfere with the CPUC's ongoing rulemaking, no court has jurisdiction to do anything that would matter." (italics added.) In other words, Uber contends that any hypothetical lawsuit or injunction based on the City's investigation would fail under the third prong of the *Covalt* test because it would "hinder or interfere with" the CPUC's regulatory authority. (*Covalt*, *supra*, 13 Cal.4th at pp. 923, 926, 925.) However, we find that the information requested in request number eight covers a wide variety of hypothetical lawsuits, at least some of which might not interfere with the CPUC's oversight of TNCs.

For example, the City Attorney could bring an action based on its investigation that would aid or complement, as opposed to interfere with, the CPUC's oversight of TNCs. (See *Hartwell Corp. v. Superior Court* (2002) 27 Cal.4th 256, 275 ["superior courts are not precluded from acting in aid of, rather than in derogation of, the [C]PUC's jurisdiction"]; *North Star Gas Co. v. Pacific Gas & Electric Co.*, Case No. 15-cv-02575-HSG, 2016 U.S. Dist. LEXIS 131684 (N.D. Cal. Sep. 26, 2016) at *42 [section 1759

14

"permits courts to entertain actions for both damages and injunctive relief against regulated entities where those actions seek to enforce, rather than challenge, obligations created by CPUC regulations"].)  The City Attorney could also bring an action based on its investigation to enforce general laws that do not interfere with the CPUC's regulations.  For example, in *Orloff*, *supra*, 31 Cal.4th at p. 1156, the California Supreme Court pointed out that "[e]nforcement of the vast array of consumer protection laws to which public utilities are subject is a task that would be difficult to accomplish by a single regulatory agency, and the applicable statutes clearly contemplate that other public law enforcement officials, in addition to the [C]PUC, must be involved in the effort to enforce such laws."  (See also *Pegastaff*, *supra*, 239 Cal.App.4th at p. 1318 [PG&E is regulated by the CPUC, but it is not immune from enforcement of employment discrimination laws]; *Wilson v. Southern California Edison Co.* (2015) 234 Cal.App.4th 123, 157–158 [the CPUC regulates utility company substations, but that regulation does not preempt nuisance claims against the utility company].)

As is evident, we do not and cannot know at this juncture what the City Attorney will choose to pursue, let alone whether or not any legal action it undertakes will hinder, aid, or have no impact upon the CPUC in its regulation of TNCs.  Thus, we hold that Uber's preemption arguments fail because they are premature and because the trial court had jurisdiction to enforce the administrative subpoenas under section 1759 and the *Covalt* test.

## D.     The Doctrine of Primary Jurisdiction Does Not Apply to Stay Enforcement of the Administrative Subpoenas

Uber contends that "appropriate legal tests confirm the common sense conclusion that the CPUC, not the City Attorney, has primary jurisdiction over Uber,"[6] but fails to explain how that constrains the City's investigative powers or the trial court's ability to enforce the administrative subpoenas.

---

[6] The City contends that that "Uber's 'preemption' and 'primary jurisdiction' arguments are basically interchangeable."  However, these are distinct legal doctrines.

The California Supreme Court has explained that the primary jurisdiction doctrine " 'applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.' [Citation.]" (*Farmers Ins. Exchange v. Superior Court* (1992) 2 Cal.4th 377, 390.) The primary jurisdiction doctrine does not permanently foreclose judicial action, but rather stays the action and gives the appropriate administrative agency an opportunity to act if it chooses to do so. (*Wise*, *supra*, 7 Cal.App.4th at p. 296.) Application of the doctrine in a case "focuses on whether agency review will enhance 'court decisionmaking and efficiency by allowing courts to take advantage of administrative expertise,' and/or help 'assure uniform application of regulatory laws.' " (*Id.* at p. 298; see *Rojo v. Kliger* (1990) 52 Cal.3d 65, 88 (*Kliger*) [the primary jurisdiction doctrine may be invoked whenever a court concludes there is a "paramount need for specialized agency fact-finding expertise"].)

Uber does not cite to any cases supporting their argument that the primary jurisdiction doctrine could apply to stay the enforcement of a valid administrative subpoena pending some resolution or examination by the CPUC. Further, there is no need for "specialized fact-finding expertise" by the CPUC in order for the trial court to enforce the administrative subpoenas. (*Kliger*, *supra*, 52 Cal.3d at p. 88.)

## E.     Uber's Confidentiality Concerns Are Addressed by the Protective Order

Uber urges us to reverse the trial court's order on the basis that the administrative subpoenas should have been rejected because they "invade[] the privacy rights of third parties and the right of Uber's TNC subsidiary to protect the confidentiality of its trade secrets." However, Uber and the City entered into a stipulated protective order that, at their request, was signed by the trial court in November 2017. The City and Uber "stipulate that the [protective order] is appropriate to protect Confidential Information and Highly Confidential Information . . . . produced in response to the Administrative

16

Subpoenas."[7]  The protective order contains detailed provisions to protect Uber's confidential information, and it provides that the order "shall survive the conclusion of the Investigation."

It is Uber's burden to demonstrate that the protective order is inadequate to protect its privacy interests, a burden that Uber fails to meet.[8]  (See *Agricultural Labor Relations Bd. v. Richard A. Glass Co.* (1985) 175 Cal.App.3d 703, 715 [in concluding that there was no evidence that a protective order would not have protected defendant's trade secrets, the court explained that "even if we concluded the trade secret privilege existed, the burden would still be on [the defendant] to show why a protective order would not solve the problem"].)

Uber expresses concern that "[i]f the City receives the private and confidential information it demands, the interests of third parties and Uber's TNC subsidiary will potentially be compromised by requests for that data under the Public Records Act." This concern is squarely and thoroughly addressed in the protective order, which provides, in relevant part, that: (1) the City Attorney must notify Uber in writing within three business days "following the receipt of any subpoena or Public Records Request relating to Confidential Information or Highly Confidential Information"; (2) in

---

[7] "Confidential Information" is defined in the protective order as "any information that Uber clearly designates as such as provided in this Order and that constitutes (i) confidential trade secrets as defined in California Civil Code § 3426.1(d), proprietary business information, commercially sensitive information that, if released, could cause competitive harm to Uber, or (ii) non-public personal, client, rider, driver, or customer information concerning individuals or other entities (including, but not limited to, name, Social Security numbers, home telephone numbers and addresses, tax returns, and medical, investment, credit and banking information.)"  "Highly Confidential Information" is defined as "Confidential Information that Uber clearly designates as such as provided in this Order and that constitutes extremely sensitive 'Confidential Information' the disclosure of which would create a substantial risk of serious harm that could not be avoided by less restrictive means."

[8] Because we find that the protective order protects Uber's privacy interest, we do not reach the issue of whether its assertions of trade secret privilege are valid.

responding to a public records request, the City Attorney is required to assert that documents designated as " 'Confidential' " or " 'Highly Confidential' " "constitute investigatory materials exempt from production under one or more provisions of the Public Records Act . . . ." ; and (3) the City is required to provide a copy of its public records response and keep Uber informed of the status of the public records request "such that [Uber] may reasonably take or respond to legal action to protect its confidentiality rights."

Uber also seeks to assert the privacy rights of its drivers by stating that "[t]he CPUC reports contain personal information – for example, rider complaints with rider identifying information along with the names of Drivers who they alleged drove while impaired." Again, this concern has already been addressed and Uber fails to demonstrate in what manner the protective order is inadequate. The protective order provides that Uber "shall mark all Documents and portions of Documents that Uber contends contain Confidential Information or Highly Confidential Information . . . as appropriate." Under its terms, "Confidential Information" and "Highly Confidential Information" may only be disclosed to attorneys and certain staff in the City Attorney's Office, and other specified individuals necessary to assist with the litigation or investigation. The protective order provides that for certain categories of people, "Confidential Information and/or Highly Confidential Information" may only be disclosed after the City Attorney received a signed confidentiality statement. Thus, Uber is able to protect the privacy interests of its drivers by designating the portions of the reports containing personal information as confidential.

Finally, if Uber believes the current protective order to be inadequate, its remedy is set forth within the order itself; the protective order "may be amended by application to the Court and upon a showing of good cause."

Thus, we reject Uber's contention that the trial court's order should be reversed on the basis that the administrative subpoenas invade the privacy and confidentiality interests of Uber or third parties.

18

## DISPOSITION

The order is affirmed in its entirety.  The City is entitled to recover its costs on appeal.

_____
Petrou, J.

WE CONCUR:

_____
_____
Siggins, P.J.

_____
Wiseman, J.[*]
_____

[*]Retired Associate Judge of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

19

*A153205/City and County of San Francisco v. Uber Technologies, Inc.*

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>    Defendants and Appellants. | A153205<br><br>(San Francisco County<br>Super. Ct. No. CPF-17-515767) |

THE COURT:

The opinion in the above-entitled matter, filed on May 17, 2019, was not certified for publication in the Official Reports. For good cause, the request for publication is granted.

Pursuant to rule 8.1105(c) of the California Rules of Court, the opinion in the above-entitled matter is ordered certified for publication in the Official Reports.

Date: _____ June 11, 2019 _____ _____SIGGINS, P.J._____, P. J.

1

Trial Court:   San Francisco County Superior Court

Trial Judge:   Harold E. Kahn

Counsel:      Dennis J. Herrera, City Attorney, Kenneth M. Walczak, Deputy City Attorney, for Respondent.

Davis Wright Tremaine, Rochelle L. Wilcox, for Appellants.