Filed 10/6/25  Robbins v. Westport Properties CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| WESLEY ROBBINS,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>WESTPORT PROPERTIES, et al.,<br><br>    Defendants and Respondents. | B331035<br><br>(Los Angeles County<br>Super. Ct. No. 21STCV03788) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Daniel M. Crowley, Judge.  Reversed and remanded with instructions.

Rogari Law Firm and Ralph Rogari for Plaintiff and Appellant.

Schumann Arevalo, Eric Arevalo, Jeffrey P.  Cunningham and Viretha R. Wright for Defendants and Respondents.

## INTRODUCTION

Appellant Wesley Robbins, acting in propria persona, filed complaints against more than 20 defendants relating in part to the alleged theft of a portion of his stamp collection from a storage facility. In this appeal, respondents are various entities associated with the storage facility where the stamps were stored: U.S. Storage Centers, Inc.; Westport Properties, Inc.; and Hawthorne Mini Venture, LLC[1] (collectively, the storage defendants). Robbins also sued Benson Williams II, the manager at the storage facility; he is not a party to this appeal. In addition, Robbins sued many members of the stamp-collecting community, alleging claims that are mostly unrelated to the alleged theft.

Robbins alleges he had a written contract with the storage defendants to rent Unit C92 at the storage facility, and he had an oral contract with Williams, as the storage facility manager, to use Unit C94 in a two-for-one deal. He alleges that Williams and the storage defendants failed to uphold their end of this bargain, however, because they deemed Unit C94 abandoned, entered it, and sold most of Robbins's belongings that were stored there. Robbins made these allegations in a series of three complaints. The trial court sustained the storage defendants' demurrers, and Robbins appealed.

We partially reverse. As to Robbins's causes of action for negligence, fraud, and trespass, we find that he has failed to allege facts sufficient to state these causes of action and therefore affirm the demurrer rulings for those claims. As to Robbins's

---

[1] Robbins also sued "U.S. Storage Centers – South Bay," which is the name of the storage facility. This is a fictitious business name of Hawthorne Mini Venture, LLC.

causes of action for conversion and receipt of stolen property, however, we find that the storage defendants' demurrer should have been overruled, and therefore reverse as to those claims and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Robbins alleged he was the victim of "two interlocking rings of conduct": first, "a conspiracy to engage in . . . abuse and harassment" perpetrated by "numerous defendants who are members of Southern California regional stamp clubs," and second, "the heist of [Robbins's] valuable stamps, philatelic covers, books, items, albums, and collections" from a storage facility in Hawthorne, California. The allegations related to the stamp club members are largely irrelevant to the issues in this appeal. We therefore focus on Robbins's allegations regarding theft of his collectible items, which he calls his "inventory."

Robbins filed a complaint on January 29, 2021 against 20 defendants, including the storage defendants and Williams, the manager of the storage facility. The complaint was 75 pages, with about 100 pages of exhibits. Robbins alleged that he began storing property at the facility in August 2001. He asserted that the storage facility advertised that a manager (Williams) lived on-site, and there was gated access, 24/7 monitoring of the storage area, and alarmed units.

"After 14 years of zero incidents at the property," in November 2015 Robbins made arrangements with Williams to move his belongings into Units C92 and C94. Robbins signed a lease for Unit C92, but Williams "indicated to [Robbins] that the deal included Unit C92 as well as Unit C94; they were side-by-side with separate doors." At the same time, Williams sold Robbins two lock-and-key sets. One was a Chinrose brand set;

3

Williams included two keys with the set. Robbins later learned that Chinrose typically provides three keys with each lock set. Robbins "began filling Unit C94 with his philatelic holding, i.e., Inventory, and continued this practice through April 2018 to the point whereby the nominal 10x10 storage locker was stuffed with roughly 350 full banker boxes and other items." He used the Chinrose lock on the door of Unit C94. Robbins believed that the facility's security system would "give him immediate notice in the event of unauthorized movement of the Unit C92 and Unit C94 doors."

On August 5, 2018, Robbins was at a stamp show when someone showed Robbins some items he thought belonged to Robbins, and suggested that Robbins's "storage locker had been 'tapped' by a 'perp.'" Later the same day, Robbins went to the storage facility and found that Unit C94 "had been ransacked but not forcibly entered"; this is when Robbins "first became aware of Unit C94's breach and enormous Inventory loss." He theorized that Williams may have played a part in the theft, either by using the extra Chinrose key, disabling the various alarms in use at the facility, and/or allowing others to enter the unit. Robbins alleged that the "Inventory loss has an estimated value that exceeds 4 million dollars with a re-sale value that exceeds 500 thousand dollars. The actual losses suffered include lost profits. There are also substantial economic and noneconomic costs to [Robbins] for the purchase, inventory, study, storage and transport of each and every Inventory element."

Robbins filed a police report. He alleged extensive facts stating that the storage defendants thwarted his efforts to discover what happened and recover his belongings. He asserted, for example, that the storage defendants did not provide Robbins

4

with the facility's CCTV recordings, made a series of conflicting statements about whether they had any information about what happened, told him they had no record of anyone accessing Unit C94, said the various security systems were broken, and claimed they never received the claim letters Robbins submitted to them. Robbins alleged that as of the date of the complaint, the storage defendants had not compensated him for the loss or provided him with any information about the alleged breach of Unit C94. He also alleged that the storage defendants and Williams "have never returned any of the Plaintiff's Inventory."

Robbins's complaint, filed in propria persona, included 12 causes of action against the various defendants. The relevant causes of action against the storage defendants in the complaint are trespass, conversion, fraud, and gross negligence; the details of these causes of action are discussed below. Robbins prayed for actual and compensatory damages in the amount of $4,000,000, as well as interest, punitive damages, attorney fees, and costs.

The storage defendants demurred to the complaint; the details of the relevant portions of the demurrers are discussed below. The trial court sustained the storage defendants' demurrer to the complaint with leave to amend.

On January 14, 2022 Robbins filed his first amended complaint (FAC), which was about 100 pages and included about 250 pages of exhibits. The FAC included several new causes of action, including one relevant to this appeal: receipt of stolen property.

In the FAC, Robbins added new factual allegations about how his belongings were removed from Unit C94:

> "Williams was directed by [the storage defendants], upon an audit of the facility Units, to maximize income. The

5

audit, in early 2018, determined that Unit C94 was not rented. [The storage defendants], believing Unit C94 was unleased, directed their 'Property Manager' and 'Owner's Agent' Williams to lease Unit C94. Williams, with a key to Plaintiff's lock for Unit C94, opened the lock and determined that Unit C94 was in use and was full of Plaintiff's Inventory items. Williams notified the Owner and management that Unit C94 was full of boxes and that an auction was needed to dispose of the property in Unit C94. Despite knowing that Plaintiff owned the property within Unit C94, Williams did not notify Owner and management that Plaintiff was using Unit C94, nor the size and nature of the contents within Unit C94. Nor did Williams notify Plaintiff that contents of Unit C94 were to be removed. Rather than an auction, Williams, exercising his 'Property Manager' role, was determined to move the contents in an unconventional manner. Williams, knowing the contents was stamps and such, reached out, after on-line research, to the biggest names in stamps in Southern California[, including one of the stamp community defendants, Stephen Pattillo.] Williams chose Pattillo as the recipient of the contents of Unit C94 for a consideration. Williams permitted Pattillo to enter Unit C94 and remove items from Unit C94."

The FAC also repeated Robbins's earlier allegations about the security systems for the facility, how Robbins learned about the theft, and the storage defendants' failure to assist his investigation or provide information about the loss. The storage defendants demurred to the FAC, and the trial court partially sustained the demurrer with leave to amend.

6

On November 14, 2022 Robbins filed his second amended complaint (SAC); it was 128 pages and included about 185 pages of exhibits. The relevant allegations from the FAC regarding the storage defendants were repeated in the SAC. The storage defendants demurred to the SAC. The trial court sustained the demurrer without leave to amend. The trial court entered judgment in favor of the storage defendants. Robbins timely appealed.

## DISCUSSION

Robbins asserts that the trial court should have overruled the storage defendants' demurrers as to his causes of action for negligence, fraud, trespass, conversion, and receipt of stolen property. The storage defendants assert that the trial court's ruling should be affirmed. Williams is not a party to this appeal.

"'"In reviewing a judgment of dismissal after a demurrer is sustained without leave to amend, we assume the truth of all properly pleaded facts. We examine the complaint's factual allegations to determine whether they state a cause of action on any available legal theory regardless of the label attached to a cause of action. [ Citation.] We do not assume the truth of contentions, deductions, or conclusions of fact or law, and may disregard allegations that are contrary to the law or to a fact that may be judicially noticed." [Citation.] We review de novo a trial court's ruling on a demurrer and examine the operative complaint to determine whether it alleges facts sufficient to state a cause of action under any legal theory.'" (*Optronic Technologies, Inc. v. Celestron Acquisition, LLC* (2025) 108 Cal.App.5th 770, 782.) "[T]he burden is on an appellant to demonstrate . . . that the trial court committed an error that

7

justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609.)

We also note what is *not* considered in reviewing a judgment following a demurrer. In this court, the storage defendants requested judicial notice that after Robbins appealed, the trial court granted summary judgment in favor of Williams. We granted the request for judicial notice. The storage defendants argue repeatedly in their respondents' brief that the case now has been adjudicated against Robbins and therefore the storage defendants "cannot be liable for Williams's alleged participation in the purported" theft. They assert that this case is "far beyond the pleading stage," and that Robbins "seeks a 'do-over' to start the case against Storage Unit Defendants anew. It is too late for that. He already lost – on the merits – twice."

The storage defendants do not mention issue preclusion or cite any legal authority to support these arguments. Indeed, issue preclusion does not apply, because Robbins has appealed the judgment in favor of Williams, and while that appeal is pending, the judgment does not constitute a final adjudication. (See, e.g., *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 825 ["[I]ssue preclusion applies: (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party"]; *Contreras-Velazquez v. Family Health Centers of San Diego, Inc.* (2021) 62 Cal.App.5th 88, 103 ["An adjudication is not final 'if an appeal is pending or could still be taken'"].) Thus, the summary judgment ruling in favor of Williams does not bar Robbins's contentions about the demurrers, which address only the adequacy of the complaint.

8

Moreover, the storage defendants ask us to reject several of Robbins's arguments based on "judicial estoppel."  They argue that because Robbins has asserted different theories about how the theft occurred—for example, that the lock on Unit C94 was "picked," and also that Williams opened the lock with a key—Robbins is barred from arguing any theories that conflict with positions he has taken previously.  However, judicial estoppel applies when a party was *successful* in asserting the first position (i.e., the court adopted the position or accepted it as true), and the first position was not taken as a result of ignorance, fraud, or mistake.  (See, e.g., *Vaghashia v. Vaghashia* (2024) 106 Cal.App.5th 188, 195; *Aguilar v. Lerner* (2004) 32 Cal.4th 974, 986-987.)

Robbins's arguments below were not successful, and it is unclear whether any of Robbins's theories were a result of fraud or mistake.  How Robbins's belongings disappeared from Unit C94 is presumably within the storage defendants' knowledge, not Robbins's, and Robbins alleged that the storage defendants thwarted his attempts to discover what happened. "'When a pleader is in doubt about what actually occurred or what can be established by the evidence, . . . that party [may] plead in the alternative and make inconsistent allegations.'" (*Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2016) 6 Cal.App.5th 1207, 1222.)  In reviewing the trial court's demurrer rulings, as stated above, we consider only the adequacy of the pleadings and construe all factual allegations as true.  Robbins was entitled to plead alternate theories about how the theft occurred.

With these legal standards in mind, we turn to the causes of action Robbins alleged, the storage defendants' demurrers to

those causes of action, and the relevant rulings by the trial court. As explained below, we find that Robbins has not demonstrated error with respect to the trial court's rulings on the demurrers to the causes of action for negligence, fraud, or trespass, but that the demurrers should have been overruled on the causes of action for conversion and receipt of stolen property.

## A.    Negligence

### 1.    *Operative pleading*

In the SAC, as in his earlier complaints, Robbins alleged a cause of action for "gross negligence" against Williams and the storage defendants.  He alleged in part that the storage defendants were negligent for failing to complete any paperwork relating to his rental of Unit C94.  Robbins also included extensive allegations that the storage defendants were negligent in maintaining the security systems at the storage facility.  The negligent "acts and omissions" Robbins attributed to the storage defendants in the SAC included:

> "(a) failing to arm the property access gate system [specifically for Unit C94] with Plaintiff's unique access code; (b) failing to maintain and repair the Falcon [security system], security, and/or operational system[s]; (c) failing to monitor the Falcon, security and/or operational system[s] including screens, monitors, videos and CCTV tapes; (d) failing to respond to any alarm notice from the Falcon system, HPD and/or PT1; (e) failing to notify corporate HQ of any breach or alarm of Unit C94; (f) failing to notify Plaintiff of any entry to property using Plaintiff's unique access code; (g) failing to notify Plaintiff of any activity with respect to the door of Unit C94; (h) failing to notify Plaintiff of any alarm set off by the alarm in Unit C94; (i)

disregarding, ignoring and destroying CCTV tapes of the property, electronic records and written reports after Unit C94 unit was breached; (j) failing to safeguard Plaintiff's property from loss, theft, misappropriation, conversion, outright sale, consignment, removal and any act causing damage to Plaintiff's property while Plaintiff was using Unit C94; (k) failing to adequately compensate Plaintiff for his losses; (l) unduly delaying the return of a substantial portion of Plaintiff's property beyond a reasonable time; (m) failing entirely to return any and all of the Plaintiff's property, i.e., Inventory; (n) failing to train staff to monitor alarms and security system; (o) failing to give care to Plaintiff; (p) failing to rescue Plaintiff; (q) failing to test, maintain and repair all elements of the Falcon, security and/or operational system[s]; and (r) failing to adequately brief the HPD regarding the theft from Unit C94, etc."

In the SAC Robbins also alleged that the storage defendants and Williams cleared out Unit C94 as part of a facility audit. He asserted that the storage defendants were required to "give notice of any lien or sale of" personal property, yet the storage defendants and Williams "gave no notice of any lien or sale. Nor did they give prior notice of entry" before entering Unit C94. Robbins further alleged that Williams "should have first notified his superiors and employers" that Unit C94 was not vacant, because Robbins had been renting Unit C94 since November 2015. Or perhaps Williams "did so and they ignored his report. Either way it is negligence. It was both scant care and abysmal care contrary to all civil and industry norms." Robbins alleged that as a result of this negligence, his "property was stolen and converted."

Robbins further alleged that the "level of negligence on the part of Defendants is so egregious that it must be reasonably attributed to gross negligence." He further stated, "Both claims of gross negligence and negligence are asserted by Plaintiff."

2. *Demurrer[2]*

The storage defendants argued in their demurrer to the SAC that the gross negligence cause of action was uncertain and failed to allege sufficient facts to state a cause of action. (Code Civ. Proc., § 430.10, subds. (e), (f).) They asserted that that "[g]ross negligence requires Plaintiff to allege 'extreme conduct on the part of the defendant,'" and Robbins had not met this standard. They further asserted that Robbins "failed to demonstrate that a gross negligence claim should stand independent of statute." Referring to Robbins's allegation that Williams neglected to include Unit C94 on the rental paperwork, the storage defendants argued that Robbins's claim accrued in 2015, was time-barred, and Robbins "failed to sufficiently allege the inability to have made earlier discovery despite reasonable diligence." The storage defendants further asserted that Robbins's allegations "do not show a 'want of even scant care' or 'an extreme departure from the ordinary standard of conduct,' and therefore do not amount to gross negligence."

3. *Ruling*

The trial court sustained the storage defendants' demurrer to the SAC without leave to amend. The court stated that

---

[2] Throughout the proceedings below, the storage defendants and Williams shared counsel and filed joint demurrers. Robbins opposed each demurrer, and the defendants filed replies in support of each demurrer; these arguments are not summarized in this opinion.

12

"'California does not recognize a distinct cause of action for gross negligence,'" and Robbins's allegations "do not constitute an extreme departure from the ordinary standard of conduct required by California law."

  4.  *Analysis*

  Robbins asserts that the trial court's ruling was erroneous. He argues that although the cause of action was titled "gross negligence," there is "no real dispute Robbins stated a claim against the Storage Entities for ordinary negligence," and the fact that the cause of action "was titled 'gross negligence' was not material."

  Robbins is correct that "[g]ross negligence is a subspecies of negligence; it is not a separate tort." (*Joshi v. Fitness International, LLC* (2022) 80 Cal.App.5th 814, 825.) "Gross negligence is different from ordinary negligence in degree, not in kind. [Citation.] Because gross negligence is simply a degree of negligence, the elements of a claim for gross negligence [are] the same as [those] for ordinary negligence." (*Epochal Enterprises, Inc. v. LF Encinitas Properties, LLC* (2024) 99 Cal.App.5th 44, 56.) The trial court therefore erred in holding that gross negligence was a separate cause of action with specific pleading requirements, and sustaining the demurrer on that basis.

  Robbins contends he alleged sufficient facts to state a cause of action for negligence. To prevail on a claim of negligence, a plaintiff must plead and prove (1) the existence of a duty of care, (2) breach of that duty, (3) proximate cause linking the breach to the plaintiff's injury, and (4) damages resulting from that breach. (*Pereda v. Atos Jiu Jitsu LLC* (2022) 85 Cal.App.5th 759, 767-768.)

13

Robbins's SAC alleged a variety of negligent acts. On appeal, however, his contention is limited; he argues only that he adequately alleged a cause of action for "negligence in maintaining and operating the security systems protecting his stamp holdings" at the storage facility. He asserts that he "alleged in great factual detail how his stamp holdings had been stolen because the pass-code access, Unit alarm, and video camera security systems did not work as they should have worked because those systems were not properly maintained, staff had not been adequately trained, or the systems had not been installed in the first place."

The SAC does indeed include extensive allegations about the purported inadequacy of the security systems at the storage facility. What the SAC does *not* include, however, are factual allegations connecting any alleged security system failures to Robbins's losses. Robbins alleged in the SAC that Williams, as the facility manager conducting an audit, unlocked and entered Unit C94—not that outsiders got into Unit C94 by bypassing faulty security systems. Robbins also alleged that Unit C94 was cleared out following a facility audit by management, not as a result of security lapses. Thus, Robbins has not alleged facts connecting his losses to any negligence by defendants with respect to the facility's security systems.

In his reply brief on appeal, Robbins argues that "both things can be true"—a working security system "would have prevented the thieves from repeatedly entering his Unit," and had the storage defendants properly trained Williams, he "would not have used the available key to trespass into Robbins' Unit C94." The allegations in the SAC about training employees, however, relate to an alleged failure to train employees about the

14

storage facility's security systems—not a failure to train Williams regarding unauthorized entry into storage units. And given that the alleged "thieves" were Williams in his role as manager and those he allowed into the unit, the allegations do not support a theory that failed security systems allowed a break-in. Robbins therefore has not met his burden on appeal to demonstrate that the trial court erred in sustaining the demurrer on the negligence cause of action without leave to amend.

## B.     Fraud

### 1.     *Operative pleading*

In his fraud cause of action in the SAC, Robbins alleged the storage defendants, and Williams as their agent, made "intentional misrepresentations" designed to "bring in and keep Plaintiff as a customer" of the storage facility. These misrepresentations included "claims and promises" about the security of the facility, both explicit and implied, such as a "Protection 1" sign outside the office, a "large bank of TV screens" displaying CCTV footage, representations that a manager lived on site, representations that all units had alarms and those alarms were properly activated, and that Robbins would be informed if there was a security breach. Robbins alleged that he "reasonably relied upon [these] representations," believing that his "ensuing use of Unit C94 would be safe and profitable." Robbins alleged that instead, Unit C94's alarm was not activated and Robbins's "Unit C94 Inventory was targeted by Williams and other Defendants." He asserted that he was never informed that the security systems did not work or that the CCTV cameras were not operational. Robbins alleged that Unit C94 was thus "breached," and Robbins was "kept in the dark" about it.

15

2. *Demurrer*

The storage defendants asserted in their demurrer to the SAC that the fraud claim was uncertain and failed to allege sufficient facts to state a cause of action. (Code Civ. Proc., § 430.10, subds. (e), (f).) They argued that fraud must be alleged with particularity, but "[n]o element of fraud based on intentional misrepresentation or concealment is pled factually or with any particularity against" the storage defendants. The storage defendants argued that Robbins did not allege any facts showing that the storage defendants' claims were false. They also contended that Robbins did not "plead a causal relationship between the alleged misrepresentation and concealment and his claimed damages," because there was no connection between any alleged misrepresentation and Robbins's losses.

3. *Ruling*

The trial court sustained the storage defendants' demurrer without leave to amend, stating, "Plaintiff fails to allege a cause of action for fraud based on either intentional misrepresentation or concealment because Plaintiff fails to allege facts establishing 'how, when, where, to whom, and by what means the representations were tendered' by [the storage] Defendants as to each representation. Plaintiff fails to allege the source of a duty for [the storage] Defendants to disclose facts to Plaintiff."

4. *Analysis*

Robbins argues that he "did, or could with leave to amend, state a cause of action for fraud." He acknowledges that the fraud cause of action in the SAC "was very long" and "was not a model of clarity," but asserts that he alleged sufficient facts regarding the storage defendants' representations to Robbins regarding security features at the storage facility. He argues

16

that he relied on these representations "to lease two Units from [the storage defendants] and move his stamp holdings to their facility. Actions which ultimately caused the his [*sic*] holdings to be stolen."

As with his negligence claim, Robbins fails to connect defendants' actions to his alleged losses. Although the complaints included extensive allegations that the security systems in the storage facility were faulty, in the SAC Robbins alleged that Unit C94 was cleared out following a facility audit by management, not as a result of security lapses. Thus, Robbins has not alleged facts connecting his losses to any misrepresentations by defendants about the facility's security systems. (See, e.g., *OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.* (2007) 157 Cal.App.4th 835, 864 ["A plaintiff asserting fraud by misrepresentation is obliged to plead and prove actual reliance, that is, to '"establish a complete causal relationship" between the alleged misrepresentations and the harm claimed to have resulted therefrom'"]; *Williams v. Wraxall* (1995) 33 Cal.App.4th 120, 131 ["An action for fraud or deceit also demands proof of damages caused by misrepresentations or concealment of information"].)

Although Robbins mentions amending his complaint, he does not suggest how this cause of action could be changed or clarified. To show that the trial court abused its discretion in denying leave to amend a cause of action, a plaintiff-appellant "'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.'" (*Connerly v. State of California* (2014) 229 Cal.App.4th 457, 460.) Robbins has not done so here. Thus, he has not demonstrated reversible error with respect to the fraud cause of action.

17

## C.     Trespass

### 1.     *Operative pleading*

Robbins alleged trespass against the storage defendants in the complaint and the FAC.  The trial court sustained the storage defendants' demurrer to the trespass cause of action in the FAC without leave to amend.[3]  Thus, the cause of action relevant to the appeal is the version alleged in the FAC.

In the FAC, Robbins alleged that Williams "entered Unit C94, and/or had others so enter, with foreknowledge that Unit C94 was leased to Plaintiff. . . . Williams had no legitimate reason to enter Unit C94" or allow another to do so.  Robbins repeated his allegations about the facility audit, which "determined that Unit C94 was not rented," and that Williams worked with Pattillo to sell and remove the contents of the unit.  He alleged that the entry of Williams, Pattillo, or others "was a substantial factor in causing Plaintiff's harm."

### 2.     *Demurrer*

The storage defendants argued in their demurrer to the FAC that the trespass claim was uncertain and failed to allege sufficient facts to state a cause of action.  (Code Civ. Proc., § 430.10, subds. (e), (f).)  They argued that "[o]nly an individual may be held liable for trespass," and "[b]ecause business entities are not individuals, Plaintiff's trespass cause of action cannot be brought against" the storage defendants.  The storage defendants also argued that Robbins had not alleged any actions on the part

---

[3]     The trial court overruled the demurrer as to Williams for trespass in the FAC.  Robbins excluded the storage defendants from the trespass cause of action in the SAC, but he added new allegations against Williams.  Williams then demurred to the trespass cause of action in the SAC.

18

of the storage defendants that might constitute trespass, aside from Williams's actions. The storage defendants further asserted that "actual harm must be caused by the trespass," which Robbins did not allege.

3. *Ruling*

The trial court sustained the storage defendants' demurrer without leave to amend on the grounds that trespass may only be asserted against an individual, not an entity. The court stated, "Because business entities are not individuals, Plaintiff's trespass cause of action cannot be brought against" the storage defendants.

4. *Analysis*

"'The elements of trespass are: (1) the plaintiff's ownership or control of the property; (2) the defendant's intentional, reckless, or negligent entry onto the property; (3) lack of permission for the entry or acts in excess of permission; (4) harm; and (5) the defendant's conduct was a substantial factor in causing the harm.'" (*Golden Gate Land Holdings LLC v. Direct Action Everywhere* (2022) 81 Cal.App.5th 82, 90-91 (*Golden Gate*).)

Robbins asserts that he alleged the elements of a trespass cause of action because he alleged that Williams, as facility manager, entered Unit C94 without permission, and "allowed Pattillo and his associates" to take Robbins's belongings, "thereby harming Robbins." However, this is not an allegation that Robbins was harmed *by defendants' trespass*. Rather, Robbins's alleged harm arose from the theft or conversion of his personal property, which is addressed in Robbins's conversion cause of

19

action.[4] Without allegations of harm resulting from the trespass itself, Robbins has failed to allege a trespass cause of action. (See, e.g., *Ralphs Grocery Co. v. Victory Consultants, Inc.* (2017) 17 Cal.App.5th 245, 250 [alleged trespass involved trespassers disrupting store business by impeding traffic and harassing customers]; *Golden Gate, supra,* 81 Cal.App.5th 82, 87, 91 [trespassers allegedly blocked racetrack for several hours, preventing scheduled races and causing the defendant to incur economic harm].)

Robbins argues that the trial court erred in sustaining the storage defendants' demurrer on the grounds that the storage defendants could not be liable for Williams's trespass. Robbins asserts he sufficiently alleged that the storage defendants could be liable under theories of respondeat superior and ratification. Because we find that Robbins failed to allege the elements of trespass under any theory, we need not address these arguments.

**D.    Conversion**

1.    *Operative pleadings*

In the SAC, Robbins alleged that the storage defendants, Williams, and some of the stamp defendants "wrongfully exercised control over Plaintiff's personal property." He alleged that the contents of Unit C94 belonged to him, and these defendants took possession of the property, prevented Robbins from accessing the property, and refused to return the property to

---

[4]    Notably, Robbins has not alleged trespass to chattels, "the 'little brother of conversion,'" which "allows recovery for interferences with possession of personal property 'not sufficiently important to be classed as conversion.'" (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1350.) He did allege a cause of action for conversion, as discussed below.

20

Robbins. He repeated his allegations about the facility audit, and stated that Williams knew the contents of Unit C94 belonged to him, but Williams nevertheless "took possession and control of the contents of Unit C94 – on behalf of" the storage defendants. Williams, "on behalf of" the storage defendants, then "sold the Inventory in whole" to Pattillo and others in multiple transactions.

2. *Demurrer*

The storage defendants argued in their demurrer to the SAC that the conversion claim was uncertain and failed to allege sufficient facts to state a cause of action. (Code Civ. Proc., § 430.10, subds. (e), (f).) They argued that Robbins "appears to allege that at least nine named Defendants . . . took possession of the 'Inventory,'" but he failed to allege "in any understandable manner" how the storage defendants converted the property. The storage defendants noted Robbins's allegations about inadequate security, and argued that as to the storage defendants, "all Plaintiff alleges is claimed negligence in securing the 'Inventory' due to inadequate security measures against theft."

The storage defendants also argued that "this cause of action against entity defendants is improper as it solely rests on the acts of their alleged employee Williams. Plaintiff does not plead facts establishing a claim for tort liability asserted against any alleged principal (i.e., entity defendants). Plaintiff does not plead facts to support the bare conclusion that Williams was acting *within* the scope of his employment; Plaintiff argues conflicting 'facts' that Williams was both acting alone and within the scope of his employment. . . ."

21

3. *Ruling*

The trial court sustained the storage defendants' demurrer on the conversion cause of action in the SAC based on the sham pleading doctrine. This was an argument Williams made in his demurrer to the trespass cause of action in the SAC, which the court apparently adopted and applied to the conversion cause of action. Addressing this ruling and the parties' arguments about it requires some additional background explanation.

Throughout his original complaint, Robbins alleged that Williams acted as the storage defendants' manager and agent. In a single sentence in the trespass cause of action, however, Robbins alleged that Williams "acted outside his official capacity as general manager of the property in this regard." Robbins amended this sentence in the FAC and SAC, replacing it with an allegation that Williams "acted in his official capacity in this regard." Trespass was alleged against Williams in the SAC, but not the storage defendants. When Williams demurred to the trespass cause of action in the SAC, he argued that Robbins's contradictory statement about Williams's role was barred by the sham pleading doctrine. The trial court held that this particular allegation was a sham pleading with respect to the trespass cause of action, and disregarded it.

The trial court then apparently applied the sham pleading reasoning to the storage defendants' demurrer to the conversion cause of action in the SAC. The court stated, "As stated above regarding Plaintiff's 6th cause of action [trespass], Plaintiff's 7th cause of action for conversion in his SAC is contradicted by the allegations in Plaintiff's Complaint that alleged Williams 'acted outside his official capacity.' [Record citation.] Accordingly, Plaintiff's allegation in the SAC that Williams 'acted in his

22

official capacity' in the cause of action for conversion constitutes a sham pleading [and] is disregarded by the Court. . . ." The court further held that Robbins's "failure to allege Defendant Williams' conduct in his official capacity" precluded Robbins from demonstrating vicarious liability as to the storage defendants. The court therefore sustained the storage defendants' demurrer as to the conversion cause of action without leave to amend.

      4.    *Analysis*

First we address Robbins's argument that the trial court "did not have jurisdiction" to rule on the storage defendants' demurrers to the conversion cause of action in the FAC and SAC. Robbins correctly points out that the trial court overruled the storage defendants' demurrer to the conversion cause of action in the original complaint. Robbins argues that as a result, the storage defendants' successive demurrers violated Code of Civil Procedure section 1008's limitations on reconsideration of orders.

However, after the trial court overruled the storage defendants' demurrer to the conversion cause of action in the original complaint, Robbins—without seeking leave to amend (see Code Civ. Proc., § 472, subd. (a))—amended his conversion cause of action to include new factual allegations. An amended pleading supersedes the original (see, e.g., *Marteney v. Elementis Chemicals, Inc.* (2018) 28 Cal.App.5th 862, 875 fn. 5), and the new allegations changed the conversion cause of action. Thus, the storage defendants' demurrers to the conversion cause of action in the FAC and SAC were not requests for reconsideration of the court's earlier ruling, which would be limited by Code of Civil Procedure section 1008, but rather new demurrers to the

23

amended cause of action.[5] (See, e.g., *Goncharov v. Uber Technologies, Inc.* (2018) 19 Cal.App.5th 1157, 1167].)

We therefore turn to Robbins's alternate contention that he pled sufficient facts to support a cause of action for conversion in the SAC. "[T]he tort of conversion is understood . . . generally as 'the wrongful exercise of dominion over personal property of another.'" (*Voris v. Lampert* (2019) 7 Cal.5th 1141, 1150.) "[T]he tort comprises three elements: '(a) plaintiff's ownership or right to possession of personal property, (b) defendant's disposition of property in a manner inconsistent with plaintiff's property rights, and (c) resulting damages.'" (*Ibid.*) It is a "'strict liability tort'" with no element regarding wrongful intent or motive. (*Ibid.*)

Robbins alleged in the SAC that he stored his personal items in Unit C94, and that "Williams, as general manager" of the storage facility, "engaged in conversion – on behalf of and under the direction of his employers." Robbins alleged that Williams "took possession and control of the contents of Unit C94 – on behalf of" the storage defendants. Robbins further alleged that the storage defendants "directed" Williams to sell the contents of Unit C94, "struck a deal with Pattillo" for those items,

---

[5]    We also note that some cases hold that a defendant may bring successive demurrers to causes of action, despite unsuccessful earlier demurrers. (See, e.g., *Berg & Berg Enterprises, LLC v. Boyle* (2009) 178 Cal.App.4th 1020, 1036 ["a party is within its rights to successively demur to a cause of action in an amended pleading notwithstanding a prior unsuccessful demurrer to that same cause of action"]; *Pavicich v. Santucci* (2000) 85 Cal.App.4th 382, 389 fn. 3; but see *Bennett v. Suncloud* (1997) 56 Cal.App.4th 91, 96-97 and fn. 1 [successive demurrer must comply with Code Civ. Proc., § 1008].)

and "ratified" Williams's actions regarding the sale of items. Robbins alleged that he had not been reimbursed for his losses.

Thus, the SAC adequately alleged a cause of action for conversion against the storage defendants. The storage defendants argue that conversion has not been adequately alleged because "[a]ll that Plaintiff alleges against the Storage Unit Defendants is claimed negligence in securing the 'Inventory' due to inadequate security measures against theft." This is a misrepresentation of the pleadings.

Robbins also argues that the trial court erred in holding that his claim was barred by the sham pleading doctrine. The storage defendants argue at length that the sham pleading doctrine bars most of Robbins's claims, including conversion. We agree with Robbins that the trial court's reliance on the sham pleading doctrine was error.

Under the sham pleading doctrine, "'a plaintiff is bound by an allegation in an earlier version of the complaint even though the allegation is omitted from later versions, but this rule is subject to the exception that a party will be allowed to correct a pleading by omitting an allegation made as a result of mistake or inadvertence.'" (*Panterra GP, Inc. v. Superior Court of Kern County* (2022) 74 Cal.App.5th 697, 711.) When "the amended pleading merely clarifies the basis for [the plaintiff's] claims for relief," the "sham pleading doctrine does not apply." (*Zakk v. Diesel* (2019) 33 Cal.App.5th 431, 449.)

Here, Robbins's complaints were very long and included many contradictory statements. The trespass cause of action in the original complaint did include the statement that during the trespass, "Williams – an employee of [the storage defendants] – acted outside his official capacity as general manager of the

25

property in this regard." That allegation was incorporated into the conversion cause of action in the original complaint. The statement contradicted multiple other allegations in the original complaint that Williams was acting as the manager for, employee of, and agent of the storage defendants at all relevant times, and that the storage defendants ratified Williams's conduct.

Robbins removed the "outside his official capacity" statement from the FAC and SAC. Indeed, it would have contradicted the new allegations Robbins added to the FAC and SAC that Unit C94 was cleared out as part of an audit of the storage facility, which Williams carried out as the facility manager.

The trial court erred in applying the sham pleading doctrine to sustain demurrers on multiple causes of action based on a single sentence that contradicted other statements in the same complaint. Moreover, the single statement was arguably a legal conclusion alleged by a plaintiff acting in propria persona, who corrected the error when he amended the complaints. "The [sham pleading] doctrine is not intended to prevent honest complainants from correcting erroneous allegations or to prevent the correction of ambiguous facts." (*Hahn v. Mirda* (2007) 147 Cal.App.4th 740, 751.) In addition, the storage defendants did not assert this as a basis for their demurrer on the conversion cause of action in the SAC.

Thus, the trial court erred in relying on the sham pleading doctrine in sustaining the demurrer to the conversion cause of action in the SAC. Because Robbins adequately alleged facts to state a cause of action for conversion, the storage defendants' demurrer to this cause of action should have been overruled.

**E. Receipt of stolen property**

1. *Operative pleading*

Robbins alleged a cause of action for receiving stolen property for the first time in his FAC, along with his new theory that Unit C94 was emptied as a result of an audit.  In the SAC, the relevant pleading for purposes of appeal, Robbins incorporated the allegations from the other causes of action.  Robbins alleged that by taking his property from Unit C94 and selling it to Pattillo, the defendants committed "the receipt of stolen property by Williams, et al [*sic*], and sale of stolen property by Williams and his employers."  Robbins alleged he was "the only one with title" to the property.  Robbins sought attorney fees, costs, treble damages, and punitive damages under Penal Code section 496.

2. *Demurrer*

The storage defendants and Williams argued in their demurrer to the SAC that the receipt of stolen property claim was uncertain and failed to allege sufficient facts to state a cause of action.  (Code Civ. Proc., § 430.10, subds. (e), (f).)  They argued that the cause of action included only "legal contentions" and allegations that "do not support *receipt* of stolen property whatsoever."  They asserted that Pattillo—not the storage defendants—allegedly "received" the stolen property.

3. *Ruling*

The trial court found that Robbins had stated a cause of action for receipt of stolen property against Williams, and overruled Williams's demurrer on that basis.  Echoing its ruling from the conversion cause of action, the court continued, "However, Plaintiff fails to sufficiently allege receipt of stolen property against [the storage defendants], as Defendant Williams

27

was alleged to have not been acting in his official capacity." The court therefore sustained the demurrer without leave to amend.

    4.    *Analysis*

    Penal Code section 496, subdivision (a) states that anyone who "sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained," commits a crime. Subdivision (c) of that statute states, "Any person who has been injured by a violation of subdivision (a) . . . may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees."

    Robbins argues on appeal that he sufficiently alleged receipt of stolen property against the storage defendants, because he alleged that Williams and the storage defendants "participate[d] in a theft of his stamp holdings." The storage defendants argue that Robbins "does not allege that the Storage Unit Defendants or even Williams did any of the acts coming within" Penal Code section 496.

    The storage defendants misrepresent both the record and the law. In the SAC, Robbins did allege that Williams, as the storage defendants' agent, as well as the storage defendants themselves, withheld and sold his property to others despite knowing that it belonged to Robbins. The storage defendants' sole basis for their demurrer to this cause of action was that they did not "receive" stolen property, and they echo this argument on appeal. But the plain language of Penal Code section 496 also includes sellers and anyone "withholding any property from the owner." (Pen. Code., § 496, subd. (a).) The statute thus ""broadly allows *anyone* injured by the sale of knowingly stolen property to bring a civil action against the seller, in order to reduce thefts by

28

eliminating the market for stolen goods.""" (*Siry Investment, L.P. v. Farkhondehpour* (2022) 13 Cal.5th 333, 348.)  Because Robbins alleged that the storage defendants, along with Williams as their agent, sold Robbins's property, he has alleged facts sufficient to state this cause of action.  (See, e.g., *Id*., at p. 339 ["treble damages and attorney's fees are available under [Penal Code] section 496(c) when, as here, property 'has been obtained in any manner constituting theft'"].)

The trial court's conclusion about Williams not acting in his "official capacity" was also clearly erroneous.  The "official capacity" allegation was only in Robbins's original complaint— which did not include a cause of action for receipt of stolen property.  Moreover, the storage defendants did not demur to this cause of action on this basis.  Thus, the trial court erred in sustaining the storage defendants' demurrer to this cause of action.

In sum, therefore, Robbins has not demonstrated error with respect to the trial court's rulings on the demurrers to the causes of action for negligence, fraud, or trespass.  With respect to the causes of action for conversion and receipt of stolen property, however, we find that the demurrers should have been overruled.

## DISPOSITION

The judgment in favor of the storage defendants is reversed.  On remand, the trial court is directed to strike its order sustaining the storage defendants' demurrer to the SAC without leave to amend, and enter a new order holding that the storage defendants' demurrer to the SAC is overruled as to the causes of action for conversion and receipt of stolen property.  In the

29

interests of justice, the parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, ACTING P. J.

We concur:


TAMZARIAN, J.


VAN ROOYEN, J.*

---

\* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution